Charles Edwin BULLARD,
Petitioner-Appellee,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellant.

No. 80–2187.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1982.

Douglas M. Becker, Asst. Atty. Gen., Austin, Tex., for respondent-appellant.

Kenneth E. Houp, Jr., Frank Maloney & Assoc., (court-appointed) Austin, Tex., for petitioner-appellee.

Before POLITZ and RANDALL, Circuit Judges, and PARKER *, District Judge.

RANDALL, Circuit Judge:

The State of Texas appeals a determination by the district court, 502 F.Supp. 887, on petition for a writ of habeas corpus that Charles Edwin Bullard was placed in double jeopardy in violation of the fifth amendment to the United States Constitution. Subsequent to a conviction for theft, Bullard was subjected to two sentencing proceedings[1] to determine if he had committed two prior offenses which would lead to a finding of habitual offender status and to the enhancement, i.e., increase, of his sentence to life imprisonment.[2] The second proceeding was ordered by the Texas Court of Criminal Appeals after it determined that, at a first habitual offender (or enhancement) proceeding, the proof by the State that Bullard had committed one of the two prior offenses alleged in the indictment was insufficient.

The State asserts that the double jeopardy clause of the Constitution does not apply to enhancement proceedings. Alternatively, the State asserts that even if the double jeopardy clause bars a second enhancement proceeding when there has been a finding of insufficient evidence at the first proceeding, the United States Supreme Court decisions establishing that principle should not be made retroactive to invalidate Bullard's second enhancement proceeding and resulting life sentence which occurred before those decisions were rendered.

■ We hold that the double jeopardy clause bars a second enhancement proceeding when the evidence at the first enhancement proceeding was insufficient to establish that the defendant committed one or more of the prior offenses necessary for enhancement, and that this principle must be retroactively applied to Bullard's petition for a writ of habeas corpus.

## I. THE FACTS

The State of Texas has custody of Bullard pursuant to a conviction, in Texas district court, for theft of property over the value of two hundred dollars but less than ten thousand dollars, a third degree felony. The indictment for theft also alleged, for enhancement of sentence purposes, two prior felony convictions: a 1970 conviction for burglary and a 1962 conviction for passing a forged instrument.

Bullard was found guilty by a jury of the offense alleged in the indictment. Pursuant to his written election, the jury was excused and the trial judge, after the state

---

* Chief Judge of the Middle District of Louisiana, sitting by designation.

1. In Texas, criminal trials are bifurcated. Tex. Penal Code Ann. § 37.07 (Vernon) (1974). After the determination of guilt the jury is then appraised of circumstances affecting sentence (such as prior convictions, see note 2, infra) and the jury, or the judge if the defendant has elected to waive a jury, assesses punishment. This sentencing proceeding where the state must prove beyond a reasonable doubt that prior convictions occurred is a part of the trial. Tex. Penal Code Ann. § 12.42 (Vernon) (1974). See note 2, infra.

2. In Texas, conviction of a felony after one or more prior convictions mandates that the sentence be increased or "enhanced" up to, and including, possible imposition of a life sentence. The defendant is known as an habitual offender.

(a) If it be shown on the trial of a third-degree felony that the defendant has been once before convicted of any felony, on conviction he shall be punished for a second-degree felony.

(b) If it be shown on the trial of a second-degree felony that the defendant has been once before convicted of any felony, on conviction he shall be punished for a first-degree felony.

(c) If it be shown on the trial of a first-degree felony that the defendant has been once before convicted of any felony, on conviction he shall be punished by confinement in the Texas Department of Corrections for life, or for any term of not more than 99 years or less than 15 years.

(d) If it be shown on the trial of any felony offense that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by confinement in the Texas Department of Corrections for life.

Tex. Penal Code Ann. § 12.42 (Vernon) (1974).

presented evidence[3] that Bullard was the same person who had committed the two prior offenses alleged in the indictment, assessed punishment at imprisonment for life.

Bullard pursued a direct appeal of his conviction and on March 3, 1976, the Texas Court of Criminal Appeals upheld the conviction, *Bullard v. State*, 533 S.W.2d 812 (Tex.Cr.App.1976), but held that the State's evidence was insufficient, under any acceptable method of proof,[4] to identify Bullard as the defendant who was convicted in one of the convictions alleged in the indictment and remanded to the trial court for a new punishment hearing. After a new sentencing hearing which resulted in imposition of a life sentence, Bullard appealed. His conviction and sentence were both affirmed by the Texas Court of Criminal Appeals. *Bullard v. State*, 548 S.W.2d 13 (Tex.Cr.App. 1977).

Bullard subsequently exhausted his state remedies by filing several post-conviction applications for a writ of habeas corpus under the Texas statutes. He then filed a

federal habeas corpus petition, alleging six grounds of error. The district court rejected all grounds of attack except one: that his second enhancement proceeding violated the double jeopardy clause[5] of the United States Constitution. The court ordered Bullard discharged from custody unless retried or resentenced, in compliance with state law, within ninety days. The State appealed, challenging both the applicability of the double jeopardy clause to the enhancement proceedings of a trial and the retroactivity of controlling Supreme Court rulings to Bullard's conviction which occurred prior to those rulings. We address each argument in turn.

## II. APPLICABILITY OF THE DOUBLE JEOPARDY CLAUSE TO ENHANCEMENT PROCEEDINGS

### A. *Purposes of the Double Jeopardy Clause*

The double jeopardy clause of the fifth amendment which provides that, in criminal proceedings, no person shall be placed twice in jeopardy for the same offense, though

---

3. At the enhancement proceeding, the trial court heard evidence concerning the State's allegations that Bullard had two prior convictions. Deputy Sheriff John Slovak, a fingerprint expert from the Dallas County Sheriff's Department, testified that he had taken Bullard's fingerprints earlier that day. He testified that, in the supporting documents of each prior conviction, one Charles Edwin Bullard was the man named as the convicted defendant. Further, each prior conviction contained a set of fingerprints. Bullard's fingerprints taken the day of trial were identified as State's Exhibit No. 1. The conviction and fingerprints in cause No. C–70–6579–MN were identified as State's Exhibit No. 2. The record of the conviction and fingerprints in Cause No. D–7519–JI were identified as State's Exhibit No. 3. Deputy Slovak compared the fingerprints on State's Exhibit No. 2 with those he had taken of Bullard earlier that afternoon and testified that they were made by the same person. However, Deputy Slovak was not asked to compare the fingerprints he had taken of Bullard with those on State's exhibit No. 3; at no time did he testify that the fingerprints he had taken from Bullard were made by the same person whose fingerprints appeared on State's Exhibit No. 3. Thus there was absolutely *no* positive identification of Bullard as the man who had committed a *second* prior offense.

4. The Texas Court of Criminal Appeals has approved several different means to prove that a defendant is the same person previously convicted:

> This Court has approved several different means to *prove* the accused was the same person previously convicted. They include, but are not necessarily limited to: (1) Testimony of a witness who identifies the accused as the same person previously convicted; (2) Introduction of certified copies of the judgment and sentence and records of the Texas Department of Corrections or a county jail including fingerprints of the defendant; supported by expert testimony identifying them as identical with known prints of the defendant; (3) And by stipulation or judicial admission of the defendant. (citations omitted) (emphasis added).

*Cain v. State*, 468 S.W.2d 856, 859 (Tex.Cr. App.1971).

5. The double jeopardy clause states:

> [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. . . .

U.S.Const. amend. V.

seemingly clear in its language, has been difficult to apply to discrete fact situations when a claim of double jeopardy is raised because the double jeopardy clause is a multifaceted provision which serves several distinct jurisprudential interests and values. These interests and values, delineated from jurisprudential literature and decisions of the United States Supreme Court,

> [i]n ascending degrees of importance ... are (1) an interest in finality ...; (2) an interest in avoiding double punishment which comes armed with a presumption in the defendant's favor; and (3) an interest in nullification—*vis.*, an interest in allowing the system to acquit against the evidence—which is absolute. These three interests are all loosely connected to the notion of ending litigation. ... But they are conceptually distinct and should be separately addressed.

Westen and Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Supreme Court Review, 81, 86 (1979) (hereafter *Double Jeopardy Theory*). Phrased another way, the double jeopardy clause implicates recognized values of:

> (1) the integrity of jury verdicts of not guilty, (2) the lawful administration of justice, and (3) the interest in repose.

Westen, *The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences*, 78 Mich.L.Rev. 1001, 1002 (1980) (hereafter *Three Faces of Double Jeopardy*).

Because there are several different and distinct values implicated, analysis of when a person is placed "twice" in jeopardy for the "same offense" has presented complex problems and has resulted in inconsistency and confusion in judicial rulings.[6] Additionally, there are myriad circumstances during the course of a criminal prosecution which may suggest that the defendant is being unconstitutionally subjected to double jeopardy.

[A]lthough the state may firmly believe it can prove a defendant guilty if given another opportunity, it may not retry a defendant following a mistrial declared over his objection if the declaration was capable of being "manipulated ... to allow the prosecution an opportunity to strengthen its case;" [*Illinois v. Somerville*, 410 U.S. 458, 469, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425 (1973),] nor following a declaration of any mistrial or the reversal of any conviction caused by deliberate prosecutorial harassment or overreaching; [*see United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976),] nor following a conviction for either exactly the same conduct; [*see Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970),] or nearly the same conduct; [*see Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977),] ... nor following a trial that ultimately terminates in a basic failure of proof. [*See Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).]

*Three Faces of Double Jeopardy* at 1037 (footnotes omitted).

The attempts to apply the appropriate values to numerous, seemingly unrelated circumstances have created a body of law which, because of its complexity, must be carefully examined to define the values implicit in the double jeopardy clause and to identify the circumstances where those values are implicated.[7] This decisional law has additionally produced a plethora of legal literature in which attempts are made to explain why the clause is or is not applicable and to predict its application in future

---

**6.** This state of the law of double jeopardy has been acknowledged by the United States Supreme Court itself. See *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). The reasons for the problems are examined fully in Westen & Drubel, *Toward a General Theory of Double Jeopardy*,

1978 Supreme Court Review 81 (1979) (hereafter *Double Jeopardy Theory*).

**7.** See, e.g., *Burks v. United States, supra,* where the Court reviews and overrules several cases dealing with the question whether a reversed conviction implicates the double jeopardy clause.

cases.[8] Unfortunately, neither in judicial decisions nor in legal literature are the complexities of the clause clarified and the inconsistencies reconciled so as to provide us with "explicit guidance" and a "bright line" analysis [9] to utilize in examining the question before us: whether a defendant may be subjected to a sentencing proceeding a second time in order to prove facts necessary to show habitual offender status when a reviewing court has determined that, in a prior sentencing proceeding, the evidence was insufficient to sustain the habitual offender status and sentence determined by the finder of fact. We must thus undertake a careful examination of the double jeopardy clause, the implicit values it seeks to protect and the circumstances in which it is applied in order to determine whether the interests protected by the double jeopardy clause are implicated in this enhancement proceeding and whether a second proceeding would offend any of these values or interests.

B. *Implications of the Double Jeopardy Clause in Sentencing.*

Bullard was convicted of theft, a third degree felony. That conviction is not under attack here. Rather, Bullard attacks his subjection to a second *enhancement* proceeding which may be characterized as a retrial of the factual issue whether his sentence should be enhanced because of prior convictions after an initial finding of insufficient facts to support habitual offender status.[10] Our analysis must focus on the question whether there are any values of the double jeopardy clause [11] implicated in this sentencing proceeding where Bullard's

first enhanced sentence was reversed for insufficient evidence.

Case law for many years indicated that the values [12] which undergird the double jeopardy clause were not often implicated in many circumstances where sentencing or resentencing occurred.

A defendant's punishment [can] be increased if his initial sentence is invalid, if his initial conviction and sentence are vacated and he is reconvicted and resentenced, if the legislature has statutorily authorized the government to appeal the defendant's sentence for such an increase, or if other limited conditions apply.

Note, *A Definition of Punishment for Implementing the Double Jeopardy Clause's Multiple—Punishment Prohibition.* 90 Yale L.J. 632, 638–39 (1981) (hereafter *Multiple Punishment*). A sentence was not often considered to have constitutional finality which would indicate that, on resentence, the defendant was being tried *twice, see Bozza v. United States,* 330 U.S. 160, 166–67, 67 S.Ct. 645, 648–49, 91 L.Ed. 818 (1947), nor was the pronouncement of one sentence considered to be an implicit acquittal of any other sentence. *See North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). However, the double jeopardy clause did have implications in sentencing when there was a finding of multiple punishment.

First, the multiple-punishment doctrine requires that the sentencing court take full account of all separate punishments imposed for a single offense. Thus, if a criminal defendant has been reconvicted and resentenced after successfully challenging his first conviction, he must re-

---

**8.** See Double Jeopardy Theory at 81–161 for a thorough analysis of double jeopardy values and the circumstances in which those values are implicated.

**9.** This "bright line analysis" was the hope of the Court in its decision in *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). However, Justice Rehnquist, who wrote the opinion in *Jenkins,* later writing for the Court in *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), admitted that "[w]e believe we have pressed too far in *Jenkins.*" 437 U.S. at 100, 98 S.Ct. at 2198.

**10.** Facts necessary to enhance sentence are, in Texas, considered to be among those facts proved at trial. See note 1 and note 2, *supra.*

**11.** See note 12, *infra* and *Double Jeopardy Theory* at 106–122.

**12.** Finality, the integrity of acquittal and prevention of multiple punishment have been articulated as the purposes of the double jeopardy clause. See *Double Jeopardy Theory* at 84, and text, supra at 4–5.

ceive credit for the period of imprisonment served after the first trial. . . .

. . . .

The second component of the doctrine prevents sentencing authorities from increasing the defendant's punishment after he has begun to serve his sentence. The trial court may not lengthen the period of punishment, increase the amount of a fine, or substitute a "more severe" type of sanction for a "less severe" one. . . .

. . . .

Finally, the multiple-punishment doctrine prohibits the sentencing court from imposing a sanction not authorized by the legislature. Thus, if the legislature provides for alternative and exclusive punishments and the defendant has completely satisfied one of those penalties, the sentencing court may not require the defendant to suffer the alternative penalty. The court, in addition, may not impose sentence for more than one offense unless the legislature clearly intended to sanction the defendant's conduct as a multiple offense.

*Multiple Punishment* at 636–640.

Bullard, however, correctly does not claim any double jeopardy violation because he has been subjected to multiple punishment. Instead he alleges that it is his subjection to a second *proceeding*, and of course the possible resulting finding of habitual offender status and increased sentence, after an appellate finding of insufficient evidence in the first proceeding, that violates his constitutional right. Bullard must somehow show that he has an interest protected by the double jeopardy clause, *i.e.*, a cognizable interest in finality in his first proceeding or an acquittal which occurred when the evidence was found to be insufficient.

Bullard's task is, at first blush, made more difficult by the recent decision in *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). In that case the United States, after obtaining a conviction against DiFrancesco and an increase in his sentence of one year because he was a "dangerous special offender," appealed the enhancement sentence, pursuant to statutory authority,[13] requesting that the enhancement sentence be further increased because the trial court abused its discretion in giving an increased sentence of only one year. DiFrancesco claimed, in cross-appeal, the right of the government to appeal and the possible increase in sentence which could result violated the double jeopardy clause in that it subjected him to the possibility of a greater sentence and placed him, a second time, in jeopardy. 449 U.S. at 126, 101 S.Ct. at 431.

The Court refused to invoke the double jeopardy clause. In doing so, it set forth several principles of the clause in relation to sentencing:

A. The Double Jeopardy Clause is not a complete barrier to an appeal by the prosecution in a criminal case. "[W]here a Government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended." *United States v. Martin Linen Supply Co.*, 430 U.S. at 569–570, 97 S.Ct., at 1353–1354, 51 L.Ed.2d 642. See also *United States v. Wilson*, 420 U.S., at 342, 95 S.Ct., at 1021, 43 L.Ed.2d 232; *United States v. Scott, supra.*

. . . .

B. The double jeopardy focus, thus, is not on the appeal but on the relief that is requested, and our task is to determine whether a criminal sentence, once pronounced, is to be accorded constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal. We conclude that neither the history of sentencing practices, nor the pertinent rulings of this Court, nor even considerations of double jeopardy policy support such an equation.

. . . .

C. This Court's decisions in the sentencing area clearly establish that a sentence does not have the qualities of constitutional finality that attend an acquittal.

13. 18 U.S.C. § 3736 (1976).

. . . .

D. The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence. 449 U.S. at 130–137, 101 S.Ct. at 434–437.

We, however, are faced with a proceeding in which the availability of enhancement depended upon a finding that certain facts existed and where there has been an appellate determination of insufficient evidence at that proceeding to establish those facts. We are thus presented with a situation markedly different than that presented in *DiFrancesco* in that, in *DiFrancesco*, there was no need for a second hearing in order for the appellate court to increase the sentence as provided in the statute nor had there been a finding of insufficient evidence to establish the factual predicate for the sentence by a trial or an appellate court. Nor is it analogous to the cases on which *DiFrancesco* relied, *e.g., North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Stroud v. U. S.*, 251 U.S. 15 (1919); *Ball v. U. S.*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), where there was no question of insufficient evidence in an initial trial or sentencing proceeding.

C. *Implications of the Double Jeopardy Clause in a Finding of Insufficient Evidence.*

The question whether any values of the double jeopardy clause are implicated when there has been an appellate finding of insufficient evidence in a trial was addressed in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).[14]

There a defendant was convicted by a jury but the conviction was overturned by an appellate court because of insufficiency of the evidence at trial. The reversal was, according to the Court, tantamount to an implicit acquittal[15] by the trial court.[16] 437 U.S. at 18, 98 S.Ct. at 2150.

The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow "the State ... to make repeated attempts to convict an individual for an alleged offense," since "[t]he constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); see *Serfass v. United States*, 420 U.S. 377, 387–388, 95 S.Ct. 1055, 1061–1062, 43 L.Ed.2d 265 (1975); *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).

. . . .

[W]hen a defendant's conviction has been overturned due to a failure of proof at trial, ... the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been submitted to

---

14. *Burks* was made applicable to state prosecutions where there is an appellate reversal for insufficient evidence in *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). *See Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (holding that the double jeopardy clause is applicable to the states through the fourteenth amendment). *See also Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981).

15. The Supreme Court ... developed a definition of acquittal as " 'the ruling of the judge, whatever its label, [which] actually represents a resolution [in the defendant's favor], correct

or not, of some or all of the factual elements of the offense charged' *Martin Linen* [*United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642] ... at 571 [97 S.Ct. at 1354]." *Scott*, 437 U.S. at 97, 98 S.Ct. at 2197.

*Tibbs v. State*, 397 So.2d 1120 (Fla.1981).

16. This rationale has been criticized, see *Double Jeopardy Theory* at 146, but the Court has continued to utilize it and has cited it with approval in its most recent double jeopardy case. *Bullington v. Missouri*, 451 U.S. 430, 442, 101 S.Ct. 1852, 1860, 68 L.Ed.2d 270 (1981).

the jury. Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.

437 U.S. at 11, 16, 98 S.Ct. at 2147, 2149. Thus a trial verdict or an appellate ruling [17] on insufficiency of the evidence implicates the interest of the defendant in maintaining the integrity of the acquittal and calls for the utmost protection of the double jeopardy clause.[18] An acquittal of a defendant creates what is in most instances an absolute prohibition against retrial under the double jeopardy clause.[19] *Double Jeopardy Theory* at 84.

The focus of our question, considering that a finding of insufficiency of the evidence leads to an implicit acquittal, is whether such implicit acquittal is to be found when there is insufficiency of the evidence in an enhancement proceeding.

### D. Insufficient Evidence in Fact Finding Sentencing Proceedings.

If *DiFrancesco* were our only authority for the application of the double jeopardy clause to sentencing, we would face a difficult task in reconciling *Burks* and its "implicit acquittal" theory to an enhancement proceeding. There is, however, an even more recent decision by the Court which does apply the implicit acquittal theory to the sentencing phase of a trial to bar a resentencing procedure. *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981).

In *Bullington*, the defendant was convicted of capital murder and sentenced by the jury to life in prison rather than to death, the other alternative for the jury under the applicable Missouri statute. Bullington was, after the verdict and sentence, able to show to the trial court that his trial was constitutionally infirm because of the systematic exclusion of women from the jury. The court granted a new trial. The state then gave notice that it would again seek

---

**17.** Whether an acquittal by a trial judge—implicit or explicit—should be given the same weight as an acquittal by a jury has been the subject of legal comment. *Double Jeopardy Theory* at 132–137. The Supreme Court, however, has refused to make such a distinction, and a judge's ruling of acquittal or an appellate court's finding that the judge should have acquitted, *Burks*, 437 U.S. at 16, 98 S.Ct. at 2149, entitles the defendant to protection of the double jeopardy clause. *Scott*, 437 U.S. at 91, 98 S.Ct. at 2193; *United States v. Sanabria*, 437 U.S. 54, 64, 98 S.Ct. 2170, 2178, 57 L.Ed.2d 43 (1978).

**18.** Two commentators suggest that not all findings of *Burks* type insufficiency of the evidence support invocation of the double jeopardy clause. Westen & Drubel, *Double Jeopardy Theory* at 146–47. While their analysis arguably confuses the *Burks* concept of sufficiency of evidence with the *Burks* concept of trial errors, see note 25, *infra*, and accompanying text, we need not determine if, indeed, the Court in its decisions has established different types of insufficiency of the evidence for purposes of double jeopardy, for even under the theory advanced above, that insufficient evidence only prevents retrial when the prosecution "has no excuse for not having mustered sufficient evidence the first time around," *id.* at 147, n. 292, such is the case before us, that is, the prosecution has presented no reason why it

failed to muster sufficient evidence for enhancement the first time around.

**19.** The case before us must be distinguished from those where the double jeopardy clause has (or has not) been invoked on appeal after a favorable ruling by a trial judge in a trial by jury or a bench trial in cases other than sufficiency of the evidence. For example, in *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1974), the Court allowed an appeal of a post-jury judgment of acquittal by a trial judge which invalidated the jury verdict of guilty. The Court found that the government appeal could, at the most, reinstate a valid jury verdict without need for a new trial. The Court has not been willing to allow a factual rehearing to prove facts after a ruling by the trial or appellate court of insufficient evidence. In the case before us, there was from the beginning an invalid verdict of enhancement. There is no valid verdict of enhancement to life imprisonment which can be reinstated without a second hearing.

This case is additionally unlike one where a sentence, based upon one count of a valid conviction, is altered when another sentence, based on another count of the conviction, is ruled invalid and vacated. *See U.S. v. Busic*, 639 F.2d 940 (3rd Cir. 1980).

the death penalty. Bullington claimed that subjection to a new hearing on whether the death penalty should be imposed would subject him to double jeopardy. On direct appeal, the Missouri Supreme Court found no double jeopardy implications. The United States Supreme Court, Justice Blackmun (the author of *DiFrancesco*) writing for the Court, held that because the jury had failed to find "whatever was necessary" to sentence Bullington to death, an implicit acquittal occurred as to imposition of the death penalty in that sentencing proceeding. Bullington was protected by the double jeopardy clause from being subjected to a new hearing where the death penalty might be imposed.

The Court stated:

Chief Justice Badgett, in his dissent from the ruling of the Missouri Supreme Court majority, observed that the sentence of life imprisonment which petitioner received at his first trial meant that "the jury has already acquitted the defendant of whatever was necessary to impose the death sentence." 509 S.W.2d at 922. We agree.

451 U.S. at 445, 101 S.Ct. at 1861. The Court further stated other interests of the defendant entitled him to protection of the clause, including freedom from "embarrassment, expense and ordeal" and the "anxiety and insecurity" of a resentencing hearing where the death penalty might be invoked. *Id.*

The Court noted that the prior cases, *Pearce, Stroud* and *Ball,* had not applied the "acquittal" rationale to a sentencing proceeding, 451 U.S. at 438, 101 S.Ct. at 1857, but found *Bullington* materially different.

The procedure that resulted in the imposition of the sentence of life imprisonment upon petitioner Bullington at his first trial, however, differs significantly from those employed in any of the Court's cases where the Double Jeopardy Clause has been held inapplicable to sentencing. The jury in this case was not given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather, a separate hearing was required and was held, and the jury was presented both a choice between two alternatives and standards to guide the making of that choice. Nor did the prosecution simply recommend what it felt to be an appropriate punishment. It undertook the burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of the two alternative verdicts. The presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence. It was itself a trial on the issue of punishment so precisely defined by the Missouri statutes.

Moreover, the Court distinguished *DiFrancesco.*

In only one prior case, *United States v. DiFrancesco,* has this Court considered a separate or bifurcated sentencing procedure at which it was necessary for the prosecution to prove additional facts.... The Government must prove the additional fact that the defendant is a "dangerous special offender," as defined in the statute, in order for the court to impose an enhanced sentence, but there are highly pertinent differences between the Missouri procedures controlling the present case and those found constitutional in *DiFrancesco.* The federal procedures at issue in *DiFrancesco* include appellate review of a sentence "on the record of the sentencing court," ... not a *de novo* proceeding that gives the Government the opportunity to convince a second factfinder of its view of the facts. Moreover, the choice presented to the federal judge ... is far broader than that faced by the state jury at present petitioner's trial. Bullington's Missouri jury was given—and under the State's statutes could be given—only two choices, death or life imprisonment. On the other hand, if the Federal Government proves that a person convicted of a felony is a dangerous special offender, the judge may sentence that person to "an appropriate term not to exceed twenty-five

years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony." § 3575(b). Finally, although the statute requires the Government to prove the additional fact that the defendant is a "dangerous special offender," it need do so only by a preponderance of the evidence. *Ibid.* This stands in contrast to the reasonable doubt standard of the Missouri statute, the same standard required to be used at the trial on the issue of guilt or innocence. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The State's use of this standard indicates that, as has been said generally of the criminal case, "the interests of the defendant are of such magnitude that . . . they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment. . . . [O]ur society imposes almost the entire risk of error upon itself." *Addington v. Texas*, 441 U.S. 418, 423–424, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979).

451 U.S. at 438–41, 101 S.Ct. at 1858–59.

Finally, the Court cited, with approval, the holding in *Burks* that insufficient evidence leads to a finding of an acquittal, 451 U.S. at 442, 101 S.Ct. at 1860, and concluded:

> The Court already has held that many of the protections available to a defendant at a criminal trial also are available at a sentencing hearing similar to that required by Missouri in a capital case. See, *e.g., Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967) (due process protections such as right to counsel, right to confront witnesses, and right to present favorable evidence are available at hearing at which sentence may be imposed based upon "a new finding of fact . . . that was not an ingredient of the offense charged," *id.*, at 608, 87

S.Ct. 1211). *Because the sentencing proceeding at petitioner's first trial was like the trial on the question of guilt or innocence, the protection afforded by the Double Jeopardy Clause to one acquitted by a jury also is available to him*, with respect to the death penalty, at his retrial.

451 U.S. at 446, 101 S.Ct. at 1862 (emphasis added).

Thus the Supreme Court decision indicates that after a death penalty sentencing proceeding, where there is an implicit acquittal from the death penalty based on facts presented, the defendant, by virtue of that implicit acquittal, is protected by the double jeopardy clause from subjection to a second hearing where the death penalty may be imposed.

**E. Applicability of *DiFrancesco, Burks* and *Bullington* to this Case.**

■ The ultimate question is whether Bullard has a cognizable interest identified in the double jeopardy clause. Applying the rationale of *Burks* and *Bullington*, we find that Bullard has an interest in maintaining the integrity of his acquittal which occurred because of insufficiency of the evidence and that he cannot be subjected to another attempt by the State to prove what it failed to prove initially. The language of the Court in *DiFrancesco*, the reasoning of *Bullington*, which adopted the *Burks* rationale and the distinctions drawn by the Court in *Bullington* provide, if not explicit guidance toward a bright line analysis, a conceptual framework in which we may consider Bullard's case.

■ Initially we set forth the unique aspects of the Texas enhancement proceeding.[20] The State is required to prove *at trial* that the defendant had committed two prior felony offenses.[21] The two prior convictions must be alleged in the indictment, *Bell v. State*, 387 S.W.2d 411 (Tex.Crim.

---

**20.** The statute is set forth at note 2, *supra.*

**21.** The bifurcated nature of Texas criminal trials requires a factual finding of guilt first and then a separate sentencing phase, Here the

sentencing phase was also a factual hearing which, according to the language of the statute was part of the "trial." *See* note 1 and note 2, *supra.*

App.1965), *aff'd sub nom., Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), and upon review the allegations are treated the same as allegations of the elements of a substantive offense. *See Plessinger v. State,* 536 S.W.2d 380 (Tex.Crim. App.1976). Additionally, Texas case law supports the premise that the allegations of prior convictions must be proven beyond a reasonable doubt.[22] *Jackson v. State,* 571 S.W.2d 1, 2 (Tex.Crim.App.1978). In summary, the existence of one or more prior convictions is an essential fact issue upon which the State has the burden of proof in order to enhance the punishment.[23] Additionally, any attempt to reinstate the enhancement to life would, after a finding of insufficient evidence by the Texas Court of Criminal Appeals, require a new hearing requiring a second attempt by the State to prove facts sufficient to support enhancement. See *Bullard v. State,* 533 S.W.2d at 816.

With this factual background we now examine the relevant case law, *Burks, Bullington* and *DiFrancesco,* for guidance.

■■■ We begin first with the principle of *Burks* that a reversal of a conviction be-

cause of insufficiency of the evidence at trial is to be treated as an acquittal. 437 U.S. at 18, 98 S.Ct. at 2150. A reversal because of trial error, however, is not to be so treated. 437 U.S. at 16–17, 98 S.Ct. at 2149–2150. The Court, in *Burks,* characterized reversal for insufficiency of the evidence as occurring when there is failure of proof as to guilt or innocence after the prosecution has "been given one fair opportunity to offer whatever proof it could assemble." 437 U.S. at 16, 98 S.Ct. at 2149. On the other hand, a reversal for trial error

as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the [prosecution] has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct.

437 U.S. at 15, 98 S.Ct. at 2149.

The first question that we face is whether the failure of the State to prove, by *any*

---

**22.** The State has not disagreed that this standard is applicable. We note also that we do not intend to review the Texas court's finding of insufficiency of the evidence, but rather inquire whether beyond a reasonable doubt is the applicable standard to see if there is an analogy to the "beyond a reasonable doubt" standard of *Bullington* that was persuasive to the Court in finding that the double jeopardy clause applied. 451 U.S. at 441, 101 S.Ct. at 1859.

**23.** The State attempts to characterize imposition of the habitual offender status as merely "a reason for more severe punishment." This characterization overlooks the statutory language and the decisions of the Texas Court of Criminal Appeals which require a factual finding of this status as an habitual offender. It is the question whether a defendant may be subjected to this fact finding procedure and the risk of enhancement a second time after the state initially failed to prove sufficient facts the first time which raises implications of double jeopardy—not just the possibility that Bullard will be subjected to a more severe sentence.

Additionally, the State alleges that the rationale for the district court's opinion was that double punishment for one offense would occur if Bullard were resentenced. We find no such language in the court's opinion. Rather, the

question addressed and correctly decided by the court was whether the State is to be afforded a second chance to muster evidence found insufficient in the first proceeding, cf. *Burks v. United States, supra,* 437 U.S. at 11, 98 S.Ct. at 2147, to impose a sentence which would have been lawful had sufficient evidence been adduced to support it. The court's discussion of characterization of the Texas statutory scheme as two offenses, one a lesser included offense of the other, was not for the purpose of saying that double punishment had occurred—but rather in saying that the lesser sentence involved an implicit acquittal of the greater sentence. Cf. *Burks v. United States, supra.*

Finally, whether Texas could be compelled under the Constitution to hold an adversarial trial on punishment issues and demand proof of prior convictions beyond a reasonable doubt is irrelevant. It is beyond dispute that state procedures not in themselves constitutionally mandated must be applied within the strictures of the Constitution. Cf. *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (appeals provided by state, while not themselves constitutionally required, must be provided to all in accordance with the equal protection clause).

acceptable method,[24] that Bullard was the person who committed one of two alleged prior offenses is an "insufficiency of the evidence" error as opposed to a "trial error."

The State characterizes the error as a trial type error rather than·as insufficiency of the evidence, relying on *Porier v. State*, 591 S.W.2d 482 (Tex.Crim.App.1980). In *Porier*, the court, when confronted with a question whether insufficient evidence in an enhancement proceeding implicates the double jeopardy clause, construed the absence of proof of *when* alleged prior offenses were committed as trial error rather than insufficiency of evidence, although the court in its opinion stated that "the evidence is insufficient to prove the facts necessary for enhancement to life imprisonment. . . ." 591 S.W.2d at 483. The court rationalized that:

> The type of error here is the type of trial error which, although it rendered the original proceeding "defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence", does not prohibit a full readjudication of the original proceedings. . . . The prior conviction is not a question of fact which determines the guilt or innocence of appellant; rather, it is an historical fact. The error in improper proof then goes to the method of proof, not the validity of the event.

591 S.W.2d at 484. Additionally, the court seemed to premise its holding that there were no double jeopardy implications on the concept that the habitual offender sentencing proceeding did not encompass the concept of an offense within the meaning of the double jeopardy clause. *Id.* at 483.

Our examination of the Texas court's concept of trial error in an enhancement proceeding leads us to the conclusion that, after *Bullington*, this characterization can no longer be viable.

Initially, after *Bullington*, death penalty sentencing proceedings are explicitly within the penumbra of the double jeopardy clause. Implicity, enhancement proceedings such as this Texas proceeding, where there are findings of fact similar to the findings in the guilt phase of the trial, are also within the penumbra. *See Bullington* 451 at 444–46, 101 S.Ct. at 1861–62. The Court, in both *Bullington* and *DiFrancesco*, emphasized that where there is a possibility of a second fact finding hearing at the sentencing phase the double jeopardy clause is implicated. The distinction that the enhancement proceeding is not encompassed because it is not an "offense" or that it is dissimilar to findings of fact of guilt or innocence is simply no longer viable.

While we are mindful that a state's characterization of error will be accepted by this court when the error so characterized is clearly trial error as identified in *Burks*, *Tapp v. Lucas*, 658 F.2d 383 (5th Cir. 1981),[25] we cannot allow a state court's characterization of error as trial error to erode the constitutional mandate of the double jeopardy clause. In *Burks* and again in *Bullington* the Court emphasized that failure of the prosecution to prove facts when it has an unfettered opportunity to do so results in reversible error because of insufficient evidence. "This is not like the case where evidence prejudicial to the defendant is admitted [or evidence beneficial is omitted] at the first trial, and a conviction obtained [and then reversed]." *United States v. Barker*, 558 F.2d 899, 902 (8th Cir. 1977). Here the State will not, in a second proceeding, simply put on evidence which was erroneously excluded. It will, instead, have to put on evidence that the State, by its own error, failed to present at the first hearing. This circumstance would be identical to that forbidden in *Burks* and

---

24. See note 3 & note 4, *supra.*

25. In *Tapp*, the Mississippi Supreme Court had characterized a state trial court's compulsion of a wife's testimony as trial error (in the language of *Burks*, an "incorrect receipt of evidence") and allowed retrial of a defendant whose conviction had been overturned because of this erroneously admitted testimony. This court, because the error was clearly trial error, recognized it could defer to Mississippi's characterization and did so. *Tapp v. Lucas*, 658 F.2d 383, 385 (5th Cir. 1981).

*Bullington* under the rationale that there had been implicit acquittal because of insufficient evidence, and is forbidden here.[26]

■ Finally, we note that if we were always to accept a state's characterization of error as trial error for purposes of habeas corpus review, a state could effectively prevent any error from being characterized as insufficiency of evidence and implicating the valued right to acquittal inherent in the double jeopardy clause. Here where the state's characterization militates against the clear language of *Burks* and the obvious failure of proof which occurred, and when in fact, the state court described the error as "failure of proof" we find that the correct interpretation of the error was that there was an appellate finding of insufficient evidence.[27]

Because the evidence of habitual offender status was insufficient, we next turn to the question whether this insufficiency amounted to an implied acquittal under *Bullington*.

**26.** We note that the decision in *Porier, supra,* which was the basis of the ruling that failure of proof in an enhancement proceeding was trial error was a five to four decision which was questioned at the time, *id.* at 484–85 (Odom, J. dissenting), and after *Bullington, Wallace v. State,* 618 S.W.2d 67 (Tex.Cr.App.1981) (Roberts, J. dissenting).

**27.** Additionally, the State's reliance on *Burks, supra,* and *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), for the proposition that the error here was not insufficiency of the evidence is misplaced. In *Burks,* "trial errors" which would not implicate the double jeopardy clause included failure to dismiss a faulty indictment, improper instruction and erroneous admission of evidence. Obviously these trial errors are materially different than the failure of proof in Bullard's case. Additionally, the Court in *Burks,* while finding that an improper sentence might not warrant invocation of the double jeopardy clause, citing, at 14, n.8, 98 S.Ct. at 2148 n.8, to an early English case, *Queen v. Drury,* 3 Cox Crim.Cas. 544, 175 Eng.Rep. 516 (Q.B.1849), referred only to an "improper sentence," *i.e.,* one beyond the statutory authorization, not one imposed in spite of insufficient evidence. In *Queen v. Drury, supra,* there was no conviction in a *factual* sentence hearing—thus there could be no question of sufficiency of the evidence in a *sentencing proceeding* presented and addressed in *Burks.* As the Court implicitly found in *Bullington, supra,* a finding of insufficient evidence (or an

The analogy of the Texas procedure to that in *Bullington* has been well stated:

All the procedural hallmarks of the trial on guilt or innocence that underlie the decision in *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), are present when the jury decides whether a defendant is an habitual felony offender. There is a separate proceeding, a requirement of proof of additional facts beyond a reasonable doubt, an explicit standard to guide the jury, and a choice of only two alternatives.

*Wallace. v. State,* 618 S.W.2d 67, 80 n.2 (Tex.Crim.App.1981) (Roberts J., dissenting).

Even in *DiFrancesco,* the Court distinguished its case where double jeopardy was not implicated from one as we have before us:

We have noted above the basic design of the double jeopardy provision, that is, as a bar against repeated attempts to convict, with consequent subjection of the

appellate reversal of an improper finding of sufficient evidence) is an acquittal in a *sentencing* proceeding—thus it cannot be said that an improper factual determination is a mere "improper sentence" amounting to no more than a trial error. In *Bullington,* the Court recognized that insufficiency of the evidence in a factual sentencing proceeding did implicate the double jeopardy clause to bar a resentencing hearing where the higher sentence might be imposed. *Bullington,* not *Queen v. Drury,* is appropriate authority.

Secondly, *Jackson v. Virginia* is inappropriate as authority for the proposition apparently advanced by the State that there was in fact no insufficient evidence. *Jackson* establishes the federal standard for appellate review to determine whether evidence is so insufficient as to violate due process in a state criminal trial. We, here, however, are not conducting a review of sufficiency of the evidence in a due process context—that evidence has been reviewed and found insufficient, according to insufficiency standards of the double jeopardy clause, *see Burks* at 437 U.S. 14–18, 98 S.Ct. 2148–2150, by the Texas Court of Criminal Appeals. The question before us is rather whether—considering that the evidence to support enhancement was insufficient—the State is precluded from subjecting Bullard to a second enhancement proceeding to try to prove its case.

defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent. These considerations, however, have no significant application to the prosecution's statutorily granted right to review a sentence. *This limited appeal does not involve a retrial or approximate the ordeal of a trial on the basic issue of guilt or innocence.* . . . Furthermore, a sentence is characteristically determined in large part on the basis of information, such as the presentence report, developed outside the courtroom. It is purely a judicial determination, and much that goes into it is the result of inquiry that is nonadversarial in nature.

449 U.S. at 136, 101 S.Ct. at 437 (emphasis added).

■ The distinctions from *DiFrancesco* in the case before us are clear—there was no statutorily granted appeal to the State of Texas to provide for a review of the habitual offender status; any imposition of a life sentence would require a new factual hearing, as opposed to *DiFrancesco*, where a sentence could be enhanced by an appellate court on review of the record only; a finding here necessitated proof beyond a reasonable doubt, in *DiFrancesco* only by a preponderance of the evidence.

28. While Justice Blackmun spoke in terms of a capital sentencing proceeding, he did not limit his rationale of acquittal to fact finding sentencing proceedings concerned only with the death penalty nor do we see any reason to do so. The important factors persuasive to the Court in *Bullington*, a trial like proceeding where the burden of proof is beyond a reasonable doubt where the government asks for a second "bite at the apple," are present here.

29. Justice Rehnquist, dissenting in *Bullington*, stated that: "The sentencer's function is not to discover a fact, but to mete out just deserts as he sees them." 451 U.S. at 450, 101 S.Ct. 1864.

In *Bullington*, however, and in the case before us, the prosecution *was* required to set forth, and the sentencer to determine, facts beyond a reasonable doubt. It is the further need for a second factual discovery that warrants invocation of the double jeopardy clause.

While the Court in *DiFrancesco* refused to ascribe to any sentence the status of acquittal, its cautious approach in limiting its holding and distinguishing the factual context in which it was appropriate suggested that other sentencing proceedings might implicate the values of the double jeopardy clause. *Bullington* provides the gap left by *DiFrancesco* required for our analysis of this case and mandates application of the double jeopardy clause to the case before us.

In summary, our analysis shows that the implicit acquittal theory of *Burks* must be applied after *Bullington* to bar a second enhancement proceeding in the sentencing phase of a trial [28] where there has been a finding of insufficient evidence of habitual offender status.[29]

Secondly, "embarrassment, expense and ordeal" and insecurity may attend a sentencing proceeding as well as a trial. *Bullington*, 451 U.S. at 445, 101 S.Ct. at 1861. Furthermore, where, in *Bullington* and this case, the state must prove facts "beyond a reasonable doubt", with the recognition that "[i]t is the State, not the defendant, that should bear 'almost the entire risk of error.' *Addington v. Texas*, 441 U.S., at 424, 99 S.Ct., at 1808, *id.* at 1861," we find that Bullard should not bear the risk of the State's error.[30]

30. The State argues that this case is closer to *DiFrancesco* that *Bullington*. It presents a novel rule it has extracted from *Bullington* —that only where there is an expectation of finality is *Bullington* applicable. The State would claim that Bullard had no expectation of finality because the judge had initially erroneously found the facts against him. If the State's theory were adopted, *Burks*, where there was insufficient evidence as determined by the *appellate* court, would not be the law today, as no defendant who suffered an erroneous conviction could expect finality. *Burks*, however, tells us that a finding of insufficient evidence leads to the implicit acquittal. This implicit acquittal recognized in *Bullington* gave Bullard an expectation of finality. The State had marshalled all its resources to prove a set of facts and it had failed. Under no possible rule to be gleaned from *Bullington* could a second hearing be warranted. Under the State's theory, an erroneous decision of a judge later reversed by an appellate court would al-

Because Bullard was once subjected to an enhancement proceeding, because the appellate court found insufficient evidence of habitual offender status, thus leading to Bullard's implicit acquittal as a habitual offender, and because resentencing would require a second trial with the State having an unwarranted "second bite at the apple" to prove facts that it failed to prove initially, the double jeopardy clause bars this second trial-like enhancement to life proceeding.

## III. RETROACTIVITY OF *BURKS* AND *BULLINGTON*

Having determined that *Burks* and *Bullington* prohibit a second trial for the purposes of enhancement of a sentence, we now face the question whether the principles established in *Burks* and *Bullington* prohibited a second trial for the purpose of enhancement of Bullard's sentence, that is, whether the principles established in *Burks* and *Bullington* are "retroactive" in application so as to vacate Bullard's life sentence which was handed down in a second sentencing hearing prior to the rulings in *Burks* and *Bullington.*

The question before us is not a simple one. The court below held that *Burks* provided the supporting rationale for its determination that the double jeopardy clause was applicable to Bullard and also determined that *Burks* should be applied retroactively. Because we, however, premise our decisions on both *Burks* and *Bullington*, we must look to see if both decisions are retroactive, thus applying to Bullard's case.

The retroactivity of *Burks* has been discussed in several cases[31]; in determining whether *Bullington* is retroactive, we write on a virtually clean slate. The approach to retroactivity, however, involves asking the

same questions of *Burks* and *Bullington.* We thus set forth the principles applicable to retroactivity in the double jeopardy context before we analyze *Burks* and *Bullington* to determine whether either or both are to be applied retroactively.

### A. *Retroactivity of the Constitutional Protection Against Double Jeopardy*

Retroactivity has been defined as follows:

In precise language, prospective operation means that the overruling decision is operative in the future only and does not even affect the parties to the overruling case. Retroactive, or retrospective, operation refers to an overruling decision, the operation of which is not limited solely to events occurring after the time of the decision. Such retroactive or retrospective operation may apply to the parties in the overruling case, or to the parties in other pending cases in addition to the overruling case, or to past transactions where no litigation was commenced before the overruling case was decided or which have been adjudicated in a final judgment, *i.e.*, a judgment no longer subject to appeal or writ of error or a similar remedy of review. Overruling decisions which are given effect only in the overruling case itself and in pending cases are properly referred to as being of "limited" retroactive effect, and decisions which have retroactive effect going beyond the overruling case and others pending are properly referred to as being of "unlimited" or "general" retroactive effect.

Rossum, *New Rights and Old Wrongs: The Supreme Court and the Problem of Retroactivity*, 23 Emory L.J. 381, n.2 (1974).

Until 1965, a presumption existed that constitutional rulings were to be given ret-

---

low the State a second chance to do what it did not do before. We will not assume that any defendant was the person who committed prior felonies after a finding of insufficient evidence on that point; the question is rather, knowing that the evidence was insufficient to show that the defendant was the same person, may a second trial be held?

**31.** In both courts where the retroactivity of *Burks* has been analyzed, there has been a finding of retroactivity. *U. S. v. Bodey*, 607 F.2d 265 (9th Cir. 1979); *Ex Parte Reynolds*, 588 S.W.2d 900 (Tex.Cr.App.1979), *cert. denied*, 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980).

roactive effect.[32] In 1965, however, in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the United States Supreme Court charted new ground, 381 U.S. at 628 and n. 13, 85 S.Ct. at 1737 and n. 13, holding that with respect to new constitutional interpretations involving criminal rights "the Constitution neither prohibits nor requires retrospective effect." 381 U.S. at 629, 85 S.Ct. at 1737. *Linkletter* and succeeding cases established factors for determining which constitutional rules were to be accorded retrospective effect and which prospective effect only. These factors, as summarized in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), emphasize (1) the purpose to be served by the new standards, (2) the extent of reliance by law enforcement authorities on the old standards, and (3) the effect on the administration of justice of a retroactive application of the new standards. *See Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969).

In 1973, the Court discussed retroactivity in the double jeopardy context. *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973). The Court held retroactive the proscription against prosecution for the same crime in municipal court and again in state court. Such prosecution had previously been declared violative of the double jeopardy clause in *Waller v. Florida*, 406 U.S. 906, 92 S.Ct. 1608, 31 L.Ed.2d 816 (1972). Thus, *Waller* applied to Robinson's conviction which occurred prior to the *Waller* decision. The Court initially distinguished traditional procedural cases where the mode of analysis had been set forth in *Linkletter* and its progeny, 409 U.S. at 507, 93 S.Ct. at 877, stating:

> We do not believe that this case readily lends itself to the analysis established in *Linkletter*. Certainly, there is nothing in *Linkletter* or those cases following it to indicate that all rules and constitutional interpretations arising under the first eight Amendments must be subjected to

the analysis there enunciated. *Linkletter* itself announced an exception to the general rule of retroactivity in a decision announcing that the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081] (1961), would be given prospective effect only. *Linkletter*, . . . dealt with those constitutional interpretations bearing on the use of evidence or on a particular mode of trial. Those procedural rights and methods of conducting trials, however, do not encompass all of the rights found in the first eight Amendments. Guarantees that do not relate to these procedural rules cannot, for retroactivity purposes, be lumped conveniently together in terms of analysis. For the purpose and effect of the various constitutional guarantees vary sufficiently among themselves so as to affect the necessity for prospective rather than retrospective application.

409 U.S. at 507–508, 93 S.Ct. at 877–878.

The Court further found that, when confronted with a question of retroactivity of the double jeopardy clause, the appropriate question is not whether the rule is necessary to protect the integrity of the fact finding process. 409 U.S. at 508, 93 S.Ct. at 877. The Court ultimately determined that "[t]he prohibition against being placed in double jeopardy is likewise not readily susceptible of analysis under the *Linkletter* line of cases," *id.*, and that

> [t]he guarantee against double jeopardy is significantly different from procedural guarantees held in the *Linkletter* line of cases to have prospective effect only. *While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial. A number of the constitutional rules applied prospectively only under the Linkletter cases were found not to affect the basic*

---

**32.** The exceptions were those such as stated in *Chicot County Drainage District v. Baxter State Board*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). For a complete discussion of the rationale for retroactivity, see Rossum, *New Rights and Old Wrongs: The Supreme Court and the Problem of Retroactivity*, 23 Emory L.J. 381 (1974).

fairness of the earlier trial, but to have been directed instead to collateral purposes such as the deterrence of unlawful police conduct, Mapp v. Ohio, supra. In Waller, however, the Court's ruling was squarely directed to the prevention of the second trial's taking place at all, even though it might have been conducted with a scrupulous regard for all of the constitutional procedural rights of the defendant. (emphasis added)

409 U.S. at 509, 93 S.Ct. at 878.

Unfortunately, the Court did not expound to any great length on whether rulings implicating the double jeopardy clause should always be retroactive and, if not, under what circumstances they should be retroactive.

The Court, however, indicated that Linkletter reliance would not be "wholly absent"[33] in the double jeopardy context, implying that reliance might prevent retroactivity, 409 U.S. at 509, 93 S.Ct. at 878, and in fact considered it in examining whether the State of Florida should have, prior to Waller, been aware that it could not bring state court charges after identical municipal court charges had been filed. The Court found that

"the state's justifiability of the reliance on lower court decisions supporting the dual sovereignty analogy was a good deal more dubious than the justification for reliance that has been given weight in our Linkletter line of cases. We intimate no view as to what weight should be

accorded to reliance by the State that was justifiable under the Linkletter test in determining retroactivity of a non-procedural constitutional decision such as Waller.

409 U.S. at 510–11, 93 S.Ct. at 878–79.

Thus, in Robinson, the Court, while seeming to distinguish procedural from non-procedural rulings, did not eschew consideration of justifiable reliance, instead considering and finding that such reliance was not justified.

After Robinson, with its intimation that reliance is to be considered to some degree, the Court, when confronted with a question of retroactivity in the procedural context, seemingly narrowed the circumstances in which reliance is to be considered, stating that reliance, after Robinson, is only a consideration "when the purpose of the rule in question [does] not clearly favor either retroactivity or prospectivity." Brown v. Louisiana, 447 U.S. 323, 328, 100 S.Ct. 2214, 2219, 65 L.Ed.2d 159 (1979) (citations omitted).

With Robinson and Brown for guidance, we now address the question whether the double jeopardy rulings of Burks and Bullington should be retroactive to apply to the resentencing of Bullard which occurred prior to the decisions in Burks and Bullington.

As in all double jeopardy cases, the decisions in Burks and Bullington are squarely directed to the prevention of second trials and the concomitant conviction or enhance-

---

**33.** The State, in its brief, alleged: "[t]he Court [in Robinson] continued to emphasize, however, the 'element of reliance embodied in the Linkletter analysis . . .'," maintaining that that decision established a two pronged test which was concerned with good faith reliance and prejudice. As has been pointed out to the State by the Texas Court of Criminal Appeals, its position may misread Robinson.

The State in its brief takes the position that Robinson in effect established a retroactivity test for double jeopardy holdings that looks only to the last two prongs of the three prong test of Linkletter. We believe that position misreads Robinson. Instead of emphasizing the "reliance" prong of Linkletter, Robinson simply stated, "The element of reliance embodied in the Linkletter analysis will not be

wholly absent in the case of constitutional decisions not related to trial procedure . . . ." (Emphasis added). We construe this phrasing to indicate that the reliance component, while not wholly absent, will be of lesser significance in the double jeopardy area.

Ex Parte Reynolds, 588 S.W.2d 900, 903 (Tex. Crim.App.1979). Far from reliance being "emphasized" as the State would have us believe, the emphasis on reliance is a questionable consideration in this non-procedural area. In fact, the Court in Robinson stated,

We intimate no view as to what weight should be accorded to reliance by the State that was justifiable under the Linkletter test in determining retroactivity of a nonprocedural constitutional decision such as Waller.

ment of sentence which may follow from those second trials. These decisions are markedly different from decisions, such as *Linkletter*, setting forth procedural rules which speak only to the manner of how trials are conducted. There the question is whether second trials are necessary to insure the protection of defendants convicted under the old unconstitutional rule and thus whether the rule must be applied retroactively. Rather, *Burks* and *Bullington* seek completely to prevent second trials and must be given retroactive effect to insure a defendant's right to be free from double jeopardy. As the district court stated,

> Unlike retroactivity of procedural guarantees such as the exclusionary rule, see *Linkletter, supra,* retroactivity of the *Burks/Greene* aspect of the guarantee against double jeopardy will not interfere with the results of trials fair in other respects, thereby resulting in a burden on our system of justice and a windfall to those lucky enough to escape reprosecution. *Burks* and *Greene* instead teach that second trials should not have been held at all, and that another reprosecution would be barred. Retroactivity of those decisions thus serves rather than disserves the ends of justice.

Where no trial should have been held, there cannot be a question, as in procedural rulings, whether the defendant, in spite of the unconstitutional ruling, was treated fairly at trial. As *Burks* and *Bullington* indicate, the double jeopardy clause forbids a second enhancement hearing; thus only if Bullard's second sentencing hearing is nullified by retroactive application of *Burks* and *Bullington* will he receive the protection the double jeopardy clause intended.

Moreover, "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial *and possible conviction* more than once for an alleged offense." *Greene v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957) (emphasis added). If the risk of conviction created by a second trial is unacceptable under the double jeopardy clause, then the enhancement of the sentence which is the result of that risk should also be unacceptable. Because the defendant has, according to the principles of *Burks* and *Bullington,* been implicitly acquitted of habitual offender status mandating life imprisonment and the resulting sentence, he should not be allowed to suffer the results of an unconstitutional second hearing, *i.e.,* a life sentence, because he was not able to halt the second hearing through available legal channels.[34]

To the extent that reliance by the State on the former rule is a consideration after *Robinson* and *Brown,* we find it unpersuasive here. The State claims that it relied on prior *Burks* law that it could retry Bullard. We note, however, that *Texas* law, prior to Bullard's appeal, had prohibited retrial and new proof. *Elizalde v. State,* 507 S.W.2d 749 (Tex.Crim.App.1974). The State, when it failed to prove, at Bullard's first trial, the facts supporting an enhanced sentence, should have had *no* belief that it could retry him. Texas law, until *Elizalde* was overruled in *Bullard,* allowed only one attempt by the State to prove the facts necessary to establish habitual offender status. The prosecutor, contrary to the State's contention, should have been aware he had one, and only one, opportunity to prove his case.

Moreover, we find the claim of prejudice to the State equally unpersuasive. The

---

**34.** The State claims that because the second hearing has been held, there is no reason to make the rules of *Burks* and *Bullington* retroactive. We disagree. While one purpose of the double jeopardy clause is to prevent a second trial, *Robinson,* 409 U.S. at 509, 93 S.Ct. at 878, it has, as another purpose, protection of the integrity of an acquittal. *Double Jeopardy Theory, supra* at 84. If the defendant may suffer the sentence even though having been acquitted, this integrity would be greatly diminished.

As such, the rules of *Burks* and *Bullington* must be retroactive to fulfill the purpose of the double jeopardy clause. *See Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (holding that even though second trial has been held, petitioner was entitled to habeas relief). As the court below so succinctly stated, to refuse to provide relief against the result of a second trial merely because the trial itself cannot be erased would be to turn the double jeopardy clause on its head.

**1366**

Court in *Robinson* found that the State was prejudiced by its holding of retroactivity. It was of the opinion, however, that the State should have been aware of the constitutional impropriety of its action. Here, where the State has had one complete, unencumbered chance to prove the facts necessary for enhancement, "the prosecutor cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble." *Burks, supra,* 437 U.S. at 16, 98 S.Ct. at 2149. As the Texas Court of Criminal Appeals stated:

> This is wholly unlike the issue of retroactivity where the alternatives are whether the State can obtain a conviction without observation of the new rule, or must seek a conviction, if any, in compliance with the new rule. The issue under *Burks-Greene* is whether the State should be allowed a post-acquittal conviction, and no changes in the rules for obtaining it

are implicated. As stated in *Burks*, "Given the requirements for entry of a judgment of acquittal, the purposes of the Clause would be negated were we to afford the Government an opportunity for the proverbial 'second bite of the apple.' " *Ex Parte Reynolds,* 588 S.W.2d at 903.

 In summary, there is no indication that the decisions in *Burks* and *Bullington* should not be retroactive.[35] To the contrary, the purpose of the double jeopardy clause mandates their retroactivity to Bullard's request for habeas relief.[36]

The judgment of the trial court is hereby affirmed in all respects.[37]

**AFFIRMED.**

---

**35.** The State complains in its brief that:

> Second, there are many reasons why there might have been additional evidence that could have been introduced at Bullard's trial—even at the punishment phase—but that was excluded for a variety of reasons.... Or Bullard might have been reindicted and retried as a habitual offender with *different* prior convictions alleged for enhancement. It is worth noting that there are numerous reasons why the State during the second prosecution might adduce constitutionally sufficient evidence after failing to do so during the first. Of some importance is the *possibility that the passage of time might* produce additional evidence.

The fact that the State made those tactical decisions cannot be justification for abrogation of the double jeopardy clause. "Legal consequences ordinarily flow from what has actually happened, not from what a party might have done from the vantage of hindsight." *Sanabria v. United States,* 437 U.S. at 65, 98 S.Ct. at 2179. If we were dealing here with acquittal on a substantive charge, the State would not argue that the double jeopardy clause should be abrogated because sufficient evidence, missing during the first trial, might be adduced at a second—i.e., that the State should be allowed to prosecute until it gets its case right. Yet *that is what the State argues here.* We find the argument unpersuasive. Because the concept of acquittal applies to this fact finding trial on the question of enhancement to life, the protection of acquittal also is applicable.

Finally, the State further alleges that Bullard *had* to undergo a second punishment hearing after the ruling of insufficiency to determine "a valid punishment." The State offers no authority for this proposition. As the district court stated, while enhancement to life is not possible, the State does have one valid prior conviction to use for enhancement, see note 2, *supra,* and a sentence based on this prior conviction may, under Texas law be possible without any new factual hearing. In any event, this is a question to be decided, in the first instance, by the Texas courts.

**36.** This court, in *Webster v. Estelle,* 505 F.2d 926 (5th Cir. 1974), stated, in dicta, that "[w]here enhancement could have been based on other convictions, reliance on an invalid one is harmless." 505 F.2d at 931. Because failure to prove the facts of prior convictions has now, after *Bullington,* implicated the double jeopardy clause, unalleged, unproved convictions cannot substitute for those where facts are not sufficient. Reliance on an invalid conviction can no longer be considered harmless. *See Ex Parte Martin* (Tex.Cr.App. 1981) [No. 67,540, April 29, 1981] (holding where one of two convictions, the basis for enhancement to life, was invalid, the defendant could only be resentenced under § 12.42(a) which provided for enhancement where there was one prior conviction).

**37.** The district court ordered that Bullard should be discharged from custody unless retried or resentenced, as the state law requires, within ninety days. See note 36, *supra.*