Johnny Lee **NELSON**

v.

A.L. **LOCKHART.**

No. PB–C–85–39.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

June 6, 1986.

John Wesley Hall, Jr., Little Rock, Ark., for plaintiff.

Clint Miller, Asst. Atty. Gen., Little Rock, Ark., for defendant.

## ORDER

EISELE, Chief Judge.

Petitioner Johnny Lee Nelson pled guilty to burglary, a class B felony, and misdemeanor theft, after taking $45.00 from a vending machine in 1979. Petitioner was then sentenced by a jury under the Arkansas Habitual Offender statute to twenty years imprisonment. The state court jury which sentenced Nelson did so on the basis of evidence of four prior felony convictions introduced by the state in the course of a separate sentencing proceeding subsequent to petitioner's plea of guilt.[1] In his habeas corpus petition now pending before the Court, petitioner asserts that he had earlier received a gubernatorial pardon from one of these four convictions and, therefore, the enhanced sentence is invalid.

In response the state initially argued that the petitioner's sentence for the felony conviction at issue had been commuted, not pardoned, and it thus was permissible to use that conviction to obtain the enhanced sentence. Upon further inquiry however, it became apparent that the petitioner had in fact been pardoned by ane executive proclamation on November 13, 1964, of a 1960 rape conviction, relating to case number 9078 in Union County, Arkansas. The state now acknowledges the fact of petitioner's pardon and it is also undisputed that under Arkansas case law, a pardoned conviction may not serve as the basis for an enhanced sentence. *Duncan v. State,* 254 Ark 449, 494 S.W.2d 127 (1973).

After reviewing the updated record, the Court issued an order on September 20, 1985. Therein the Court indicated that although the petitioner's trial attorney made no contemporaneous objection to the use of the pardoned conviction, counsel's failure to object constituted ineffective assistance of counsel, and thus *Wainwright, Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), would not prevent the Court from considering the petition. The Court further indicated that the revelation of the pardon made it likely that a writ of habeas corpus would be granted unless the state resentenced the petitioner. Before proceeding further, however, the Court appointed counsel to advise the petitioner of his legal rights and, in particular, to confer with him about the risks of going forward in view of the possibility that a

1. Upon proof of four such convictions the jury could have imposed an enhanced sentence rang-

ing from twenty years to forty years.

resentencing of petitioner might result in his receiving a sentence in excess of twenty years.

The state subsequently expressed, through a letter to the Court, its intention to resentence the petitioner. This raised the prospect that the petitioner might well receive a longer sentence than the one rendered invalid by the pardon, since petitioner had other prior felony convictions not offered or introduced at the initial sentencing, and since he had received the minimum sentence within a wide possible range. Assuming that the state would be allowed to resentence the petitioner and that the state would then introduce other prior felony convictions not introduced in the previous sentencing proceeding, his attorney counseled petitioner against pursuing the habeas claim. Counsel reported to the Court that he had so advised his client but that the petitioner nevertheless desired to continue the case. Shortly thereafter the Court issued another order in which it indicated that if, after conferring with his counsel again, petitioner still wished to go forward, the Court would require the petitioner to appear so that the Court could satisfy itself that the petitioner understood the possible consequences of his decision. Prior to the date of any hearing, however, petitioner's counsel brought to the Court's attention the possibility that the state might be entirely barred from resentencing the petitioner as an habitual offender upon the present conviction.

Petitioner has raised a very serious issue which warrants careful reexamination of the case in light of the Double Jeopardy Clause of the Fifth Amendment. Having completed this reexamination, the Court now concludes that its earlier expressions suggesting that the state would be able to resentence the petitioner were erroneous. The Court now finds that the Writ of Habeas Corpus must be granted because the state failed to satisfy the evidentiary requirements necessary to sentence the petitioner as an habitual offender under Arkansas law. Ark.Stat.Ann. § 41–1001. The Court also finds that the Double Jeopardy

Clause prevents the state from resentencing the petitioner under that law.

PROCEDURAL ISSUES

Before discussing the merits of petitioner's double jeopardy argument, the Court must first deal with two procedural hurdles that the state argues should prevent this Court from considering the merits of the petitioner's pleading.

*Wainwright*

■■■ In its original response to the petitioner's claim, the state contended that the Court may not review Nelson's habeas petition since the state court rejected his protest on the grounds that petitioner had failed to make a contemporaneous objection to the use of the questionable conviction. A prisoner may not bring a habeas claim to federal court where he did not comply with a state procedural requirement unless he is able to show that there was cause for the default and that actual prejudice resulted from the failure. *Wainwright, supra.* While *Wainwright*'s "cause and prejudice" test is intended to deny the federal habeas claim to the defendant who "sandbags" at trial in order to preserve a second chance for acquittal in a federal forum, Id. 97 S.Ct. at 2507–08, it is not an inflexible standard. "Cause" and "actual prejudice" are "not rigid concepts," and therefore the "victims of a fundamental miscarriage of justice" shall be able to satisfy the standard. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982).

As the Court's earlier order indicates, petitioner here can show cause for failing to object to the use of the pardoned conviction. The Court believes that counsel's unfamiliarity with petitioner's trial record and counsel's failure to explore the issue once petitioner testified that he had been pardoned constitute "cause." It is beyond question that the petitioner himself made no deliberate decision to bypass any objection in the hopes of saving this argument for a federal forum. On the contrary, the petitioner claimed at trial that he had received a pardon and only reluctantly acquiesced in the prosecutors statement that

his sentence had been commuted after the prosecutor insisted that the petitioner was confusing a commutation of sentence with a pardon.

It is questionable whether *Wainwright* should apply at all, since the petitioner personally made every effort to allow the Court and the prosecution to clear up the questionable conviction. The petitioner effectively objected to the use of the pardoned conviction. The Court believes that the petitioner should not be penalized for his inability to distinguish the technical legal difference between a commutation and a pardon. Under the circumstances his statement that he was pardoned was not withdrawn by a later statement on cross-examination that his sentence had been commuted. It would be understandable if the petitioner came to believe them to be the same since he had no legal education.

*Ripeness*

■ The state, by way of a letter to the Court, brings up the second procedural hurdle by arguing that the Court lacks jurisdiction to review the double jeopardy issue since the state has not yet tried to resentence the petitioner. The Court is not persuaded, however, that it must force the petitioner to be exposed to a possible resentencing before he may assert his constitutional right to be free from double jeopardy. To do so would be most unfair and would dilute this Constitutional protection which guarantees that one may not be *exposed* to the rigors and ordeal of a second trial-like proceeding. It is not just the outcome of the proceeding but the subjection to it that the Clause prevents. 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957). For this reason, courts have frequently allowed a habeas petitioner to advance his double jeopardy argument in anticipation of a resentencing. *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), *Bullard v. Estelle*, 665 F.2d 1347 (5th Cir., 1982). Thus, the Court finds that it may consider the merits of petitioner's double jeopardy claim.

## DOUBLE JEOPARDY

The Court faces two questions on the merits of Nelson's habeas petition. The first of these concerns the matter of whether the Double Jeopardy clause of the fifth amendment of the United States Constitution, as applied to the states through the fourteenth amendment, see *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct 2056, 2062, 23 L.Ed.2d 707 (1969), would ever apply to a sentencing procedure under the Arkansas Habitual Offender Act, Ark. § 41–1001 et seq. If the Double Jeopardy clause does extend to the state attempt to enhance a convicted defendant's sentence under this act, then the Court must determine whether the jury's reliance on the petitioner's pardoned conviction in this case constitutes trial error or is a matter of the sufficiency of proof. If the defect is merely reversible trial error, there is no double jeopardy and the state is free to resentence. If, on the other hand, the use of a pardoned conviction to enhance means that the jury's finding lacked a sufficient evidentiary basis, then the petitioner has been effectively acquitted on the question of enhancement, and double jeopardy would, therefore, preclude another hearing on the issue.

### Application of Double Jeopardy to Sentencing

Until recently, the double jeopardy clause had never been applied to sentencing. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 2077–78, 23 L.Ed.2d 656 (1969). Thus a defendant who was convicted a second time after the original conviction has been nullified might be sentenced after the second conviction to a stiffer penalty than he had received pursuant to the overturned conviction so long as the heavier sentence is not imposed as punishment for exercising the right to appeal:

"Long-established constitutional doctrine makes clear that, ... the guarantee against double jeopardy imposes no restrictions upon the length of a sentence imposed upon reconviction.... it has been settled that a corollary of the power to retry a defendant is the power, upon

the defendant's reconviction, to impose whatever sentence may be legally authorized, whether or not it is greater than the sentence imposed after the first conviction." *Pearce* 89 S.Ct. at 2078.

In *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), the Supreme Court carved out an exception to this traditional inapplication of double jeopardy to sentencing. Without disturbing the prior line of cases like *Pearce,* the Court found that where the sentencing procedure "was itself a trial on the issue of punishment," the double jeopardy protection attaches. *Bullington* 101 S.Ct. at 1858.

The petitioner in *Bullington* had been convicted of capital murder by a Missouri jury. Before the death penalty could be imposed, Missouri law required a second hearing in front of the jury wherein the state had the burden of proving beyond a reasonable doubt the presence of certain aggravating circumstances that would warrant the imposition of the capital sentence. *Id* at 1855. Under the statute, The defense could offer evidence of mitigation and a death verdict had to be unanimous. If the prosecution failed to obtain the death sentence, the defendant would receive a sentence of life imprisonment. Upon Bullington's conviction, the jury heard testimony from the government in its effort to obtain the death penalty. However, the jury refused to order Bullington's execution and he received a life sentence.

The trial court later set aside Bullington's conviction and ruled that he was entitled to a new trial. The state then indicated that if Bullington was convicted at retrial, it would again present evidence to support a death sentence. The defendant, claiming the protection of double jeopardy, objected and the Supreme Court agreed that since the jury had once refused to impose the death penalty, the state could not try that question again. *Id.* at 1857. While noting that ordinarily imposition of a particular sentence does not constitute an acquittal of any more severe sentence, the Court found a fundamental difference in

this instance. *Id.* What set the Missouri sentencing statute apart from those to which the Supreme Court had consistently said that double jeopardy did not apply was its resemblance to the proceeding for deciding guilt or innocence:

The procedure that resulted in the imposition of the sentence of life imprisonment upon petitioner Bullington at his first trial, however, differs significantly from those employed in any of the Court's cases where the Double Jeopardy Clause has been held inapplicable to sentencing. The jury in this case was not given unbounded discretion to select an appropriate punishment from a wide range authorized by statute. Rather, a separate hearing was required and was held, and the jury was presented with a choice between two alternatives and standards to guide the making of that choice. Nor did the prosecution simply recommend what it felt to be an appropriate punishment. It undertook the burden of establishing certain facts beyond a reasonable doubt in its quest to obtain the harsher of the two alternative verdicts. The presentence hearing resembled and, indeed, in all relevant respects was like the immediately preceding trial on the issue of guilt or innocence. It was itself a trial on the issue of punishment so precisely defined by the Missouri statutes.

In contrast, the sentencing procedures considered in the Court's previous cases did not have the hallmarks of the trial on guilt or innocence. In *Pearce, Chaffin [v. Stynchcombe,* 412 S.Ct. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714] and *Stroud [v. United States,* 451 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103,] there was no separate sentencing proceeding at which the prosecution was required to prove—beyond a reasonable doubt or otherwise—additional facts in order to justify the particular sentence. *Id.* at 1858.

■ Many of the characteristics of the Missouri statute which triggered the application of double jeopardy in *Bullington* are present in the Arkansas Habitual Offender

statute. Ark.Stat.Ann. § 41–1001 et seq. The latter states that a person who is convicted of a felony and has been previously convicted of a felony or felonies, "may be sentenced to an extended term of imprisonment," depending on the number of prior felony convictions. § 41–1001(c). When the state seeks to have a convicted defendant's sentence extended under the Arkansas law, it requires a separate hearing, upon the determination of guilt, wherein the prosecutor must present evidence of the prior convictions and the defense has the opportunity to rebut. Specifically, the statute states that whenever a:

> defendant is found guilty of the felony, the trial court, out of the hearing of the jury, shall hear evidence of the defendant's previous felony convictions or previous findings of the defendant's guilt of felonies and shall determine the number of prior felony convictions, if any. Defendant shall have the right to hear and controvert such evidence and to offer evidence in his support. Ark.Stat.Ann. § 41–1005(2).

As with the Missouri procedure at issue in *Bullington,* and like the proceeding to determine the defendant's guilt or innocence on the predicate offense, the prosecution seeking enhancement under the Arkansas Habitual Offender's Act has the burden of proving the prior convictions beyond a reasonable doubt. Section 1003 of the Act imposes this conventional prosecutorial burden of proof:

A previous conviction or finding of guilt of a felony may be proved by any evidence that satisfies the trial court beyond a reasonable doubt that the defendant was convicted or found guilty. Ark. Stat.Ann. § 41–1003.

If the trial court finds that the government has proved any prior convictions beyond a reasonable doubt, it instructs the jury as to its findings. The jury, in turn, retires to determine whether to enhance and, if so, the appropriate sentence within the statutory range. § 41–1005(3).

The Court notes that the amendments to the Arkansas Act in 1981, prior to the petitioner's trial, make no difference to the analysis of the statutory procedure under *Bullington.* Act 252, 1981 Acts of Arkansas, p. 360. Before the Arkansas General Assembly adopted the 1981 changes, the jury heard the evidence and made the determination on the question of the number of prior convictions proved by the state. As amended, the law now requires the trial court to hear the evidence and make this factual finding.[2] § 41–1005. After finding the number of prior convictions which have been proved beyond a reasonable doubt, the trial court instructs the jury as to this finding. Under the former law, the jury, not the trial court, decided the factual question of how many prior convictions, if any, had been proved. Under both the former and present statute, the jury decides the proper sentence.

2. Although the Act was amended on February 27, 1981, and petitioner's trial took place on March 12, 1982, it is quite clear from a review of the sentencing transcript that the state trial court labored under the mistaken belief that the old law was still in operation. The trial judge apparently did not realize that the legislature had transferred from the jury to the trial court the factual determination of the number of valid prior convictions. In the instant case, the jury heard the testimony from the only witness called, the petitioner himself, and the jury examined the documents introduced by the state in support of its claim that petitioner had four prior convictions. That the jury found the number of prior convictions is clear on the face of the verdict form given them by the court and subsequently returned by the jury: "We, the jury, find the defendant Johnny Lee Nelson

guilty of the offense of burglary and theft of property of less than 100 dollars and *find that he's been convicted of four previous felonies.*" [emphasis added].

If the law, as amended, had been adhered to, the court would not have given the jury the task of determining the number of prior convictions. The trial court's mistake in defining the province of the jury, however, is of no consequence at this juncture. Surely, the defendant could have asked for a new sentencing, if he had objected to the trying this question to the jury and the court had proceeded nonetheless. And it is conceivable that had the government objected to the procedure, it would have been entitled to a new sentencing had the jury not returned the verdict sought by the government. But all of this is mooted by the failure of either party to ever assert any objection.

This relatively minor adjustment to the law does not alter the important character of the proceeding. Whether the trier of fact with regard to the number of prior convictions is the jury or the court, the critical element is that the procedure still resembles a trial wherein both sides present evidence, examine and cross-examine witnesses, and the prosecution carries the burden of proof beyond a reasonable doubt.

In one respect the procedure at issue here is somewhat different from that present in *Bullington*. Namely, the jury determining Bullington's sentence had a choice between only two alternatives, execution or life imprisonment, while the jury's choice under the Arkansas enhancement statute was more flexible in that the jury had available a range of twenty to forty years that could have been imposed on Nelson once the jury decided to enhance.[3] The Supreme Court's opinion in *Bullington* does focus on the analogy between deciding guilt or innocence and deciding death or life sentence. However, this Court's reading of *Bullington* leads it to conclude that the emphasis is upon the trial-like qualities of the sentencing phase rather than the "up or down" nature of the jury's choice in *Bullington*. In both cases the state has the burden of proving some factual proposition beyond a reasonable doubt as a predicate to the jury's having discretion to impose a more serious sentence. In one case it must establish some minimum of aggravating circumstances; in the otherit must establish some minimum number of convictions. If the prosecution establishes the required facts beyond a reasonable doubt then and only then the jury decides if it wishes to enhance. If it decides to do so then, in the *Bullington* situation, it has only one option: death. In this Arkansas case the jury has a broad range of enhanced sentences it could impose. But in both instances the jury has the prerogative to deny the requested enhancement entirely. The important considera-

tion, in any event, is whether the enhancement procedure available under § 41–1001 *et seq.* possesses all the "hallmarks of the trial on guilt or innocence." *Bullington* 101 S.Ct. at 1858. The Court concludes that it does and therefore that the rationale of *Bullington* requires the application of the Double Jeopardy Clause to the those proceedings pursuant to the Arkansas Habitual Offender Act.

### Double Jeopardy: Defective Proof or Trial Error

Although the Court herein finds that the proceeding by which the petitioner's sentence was enhanced was sufficiently similar to a trial for jeopardy to attach, it does not follow that the state cannot resentence the petitioner in this case. The ban on double jeopardy, for instance, does not preclude a retrial—or resentencing—where the initial proceeding contained some reversible flaw. As the Supreme Court has held, to spread double jeopardy this broadly would be costly and inconsistent with justice:

> "It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible trial error in the proceedings leading to conviction." *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964)

The Double Jeopardy Clause that applies generally to enhanced sentencing pursuant to the Arkansas statute shall specifically bar resentencing in only those instances where the final outcome of the original sentencing is tantamount to an acquittal on the issue of enhancement. Thus, *Bullington* notes that Double Jeopardy cannot attach in cases where no standard of proof existed such that it could be said that the state failed to prove its case. *Bullington* 101 S.Ct. at 1860. Double Jeopardy acts as a bar against resentencing when the sentencing procedure is essentially a "trial" in

---

**3.** The Arkansas courts have held that the state's habitual offender statute provides the jury with the option of not enhancing. *Mathis v. State,*

267 Ark 904, 912, 591 S.W.2d 679 (1980); *Rogers v. State,* 10 Ark.App. 19, 22, 660 S.W.2d 949 (1983).

nature AND the prosecution fails to prove its case:

The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. *Burks v. United States,* [437 U.S. 1] 98 S.Ct 2141, 2147 [, 57 L.Ed.2d 1] (1978).

In contrast, reversal for trial error carries with it no Double Jeopardy significance since the appellate court is not, in effect, saying that the prosecution failed to prove its case. *Burks* 98 S.Ct. at 2149. Reversal for trial error

implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect instructions, or prosecutorial misconduct. *Burks* at 2149.

■ The question therefore is whether the use of the invalid prior conviction in the instant case was trial error or a deficiency in the proof of the prosecution's case for enhancement. Arguably, the trial court's decision to allow the introduction of the prior conviction after the defendant had initially claimed he had been pardoned constituted trial error. However, the language of the statute prescribing the procedure for enhancement belies any such claim. The question of the number of prior convictions is repeatedly and clearly made a matter of evidentiary proof within the Arkansas statute as it read at the time of petitioner's trial. Furthermore the trial court did not intervene here. It was not called upon to rule on the validity of the conviction.

Sections 41–1001 and 41–1005 require that previous convictions be *proved,* and that the fact-finder be satisfied of this proof beyond a reasonable doubt. Further, a separate provision sets out the means by which the prosecution may *prove* the validity of prior convictions. Ark.Stat.Ann. § 41–1003. The entire chapter reveals that the question on enhancement is one of an evi-

dentiary nature, to be proved by the state beyond a reasonable doubt.

Application of these provisions in the petitioner's sentencing procedure underscores the fact the fundamental issues involved in the brief sentencing procedure concerned matters of proof. The transcript illustrates this point. Various statements by the trial judge stress the jury's obligation to weigh the evidence presented by the government:

THE COURT: ... However, what we are looking for is twelve people who are fair and impartial in determining the sentence in this case. So does any juror know of any reason that if chosen to serve as a juror that he could not be absolutely fair and impartial and base his verdict strictly upon the law as given to you by the Court and the evidence that is gained from the witness stand? ...

\* \* \* \* \* \*

THE COURT: Ladies and gentlemen, in view of the procedure that we will follow, the opening statements are waived and you gentlemen may call your first witness.

Similarly, the prosecution's introduction of documents purporting to show that the petitioner had the requisite four prior convictions indicates that the issue was one of proof:

PROSECUTOR: Your Honor, as I understand the procedure at this point in time the state would be entitled to put into the record certified copies of the previous commitments.

THE COURT: All right.

\* \* \* \* \* \*

PROSECUTOR: And I would offer into the record at this time, your Honor, a commitment that I have secured from the Union County Circuit Clerk which is case number CR 74–137. Proceedings were conducted July 18, 1974, and in those proceedings this defendant Johnny Lee Nelson entered a plea of guilty to the charge of burglary and grand larceny, received a 21 year sentence on each charge to run concurrent with the last

ten years of each sentence suspended on good behavior. This is for a total of four separate felony convictions in Union County, all of which occurred in this court.

THE COURT: All right you may hand those to the jury and the jury may review them.

As discussed under the *Wainwright* analysis above, the petitioner personally objected to the introduction of the pardoned conviction as a basis for enhancement. Under direct examination by his attorney, the petitioner initially acknowledged that he had perhaps been convicted on four previous occasions:

DEFENSE COUNSEL: Okay now, Mr. Nelson, you also have prior convictions?

NELSON: Yes, I do.

DEFENSE COUNSEL: You've gone afoul of the law before?

NELSON: Yes, I have.

DEFENSE COUNSEL: On I guess—do you know how many occasions?

NELSON: Well it's been so long ago but I think maybe four. But it's been like I say well, twenty years or more.

A few moments later, under questioning by the prosecution, petitioner unhesitatingly stated that he had been pardoned on one of these four occasions:

NELSON: I stayed uh—well if the Jury mind me, I'd like to clear that up on that charge. This in the record it should be two charges because I see where they made a mistake. I was charged with aggravated assault and robbery which I don't know why I shouldn't be on the record but what I was charged with was on commitment where I was in the institution. But at the time I only did three years and ten months on that charge because of a pardon which I had the case investigated and the governor at the time Faubus which gave me a pardon for my sentence.

PROSECUTOR: Governor Faubus?

NELSON: Yes, sir, which at my home I have documents of that pardon on that.

And, again, under redirect examination, Nelson restated his claim of the pardon:

DEFENSE COUNSEL: Mr. Nelson, you mentioned in reference to the very first conviction that you had something about a pardon. Was that not really the judge commuted that, your sentence to time served?

NELSON: No, sir. Just like I said, the time when I got that charge on that rape, assault—they had me with rape, assault and a robbery. They had the sentences you know in two sentences. I had the fourteen years and I had a seven years. But during the time I doing time, on doing time you do the smallest time first and the large time last. Well in the process I had—which my mother had, some more people had my case investigated by the F.B.I. And during that time Governor Faubus gave me a pardon on the whole thing.

DEFENSE COUNSEL: You're saying on the robbery charge?

NELSON: On the robbery and the rape charge. Of course I was sentenced to 21 years and I was doing time on the robbery charge which I was supposed to have been doing time—do the robbery charge and then start on the rape charge. But in the process of the investigation they cut the whole thing to time served.

At this point, the prosecution should have been on notice that there were possible problems in the proof of at least one of the prior convictions. There had been no stipulation or admission with respect to the valid prior convictions and, in fact, the petitioner had vigorously claimed that one of them was pardoned. Nevertheless, instead of offering some evidence that either the petitioner was not pardoned or that his sentence was commuted, the prosecutor merely suggested that the petitioner was confused, that he had really received a commutation of his sentence:

PROSECUTOR: Your Honor, I feel compelled at this time to make a motion to strike this testimony because I think the defendant is in error. I think he's con-

fused as to the meaning of the pardon and a commutation. Now I hesitate to allow the jury to hear this and become confused and I would ask the Court to strike the testimony. It's hearsay— would be another stated objection. I think the records are clear that are in the court and perhaps some comment by the Court to the jury could clear the matter up.

THE COURT: I think he cleared it up himself when he said it was commuted to time served. Is that what you said?

NELSON: Yes, sir.

THE COURT: Does that answer your question? It was commuted to time served. It's not a pardon. Do you agree, Mr. Keaton?

DEFENSE COUNSEL: Well that's the way it sounds to me.

THE COURT: That's what he said in this last statement.

DEFENSE COUNSEL: All right.

The Court apparently was also misled into thinking that the petitioner was mistaking a commutation for a pardon. But the prosecution could not prove the absence of a pardon beyond a reasonable doubt since, in truth, the pardon exists. Thus, there is simply a defect in the state's proof. It failed to bring forward evidence of four prior convictions which would meet the state's standards.

Perhaps one might argue that the government met its burden of proof by complying with the standards of proof set out in § 41–1003. That section lists three ways of proving a prior conviction, one of which is "a certificate of the warden or other chief officer of the penal institution." § 41–1003(2). At the sentencing trial, the state introduced State's Exhibit Number One, a copy of the penitentiary commitment for petitioner pursuant to the criminal charge 9078. Though the petitioner received a pardon for the conviction under-

lying this penitentiary commitment, a narrow and literal interpretation of § 41–1003 might suggest that this commitment is all the government must show to satisfy the requirements for enhancement. But this argument proves too much and ignores the Arkansas Supreme Court's holding in *Duncan, supra.*

Given that the state court has held that pardoned convictions do not count toward enhancement, see *Duncan,* § 41–1003 must be interpreted to mean that the introduction of a penitentiary commitment, or some other accepted documentation, is merely sufficient to show a conviction; it is not dispositive on the matter of enhancement, which requires valid, unpardoned convictions. Any other construction of the statute would make *Duncan* meaningless, since for every pardoned offense the government could obtain and introduce one or more of the documents listed in § 41–1003.

Similarly, the government might also contend once the government made a showing that the questioned conviction did occur, it was then incumbent upon the defendant to prove the pardon. The Court rejects this argument, concluding as a matter of law that under the Arkansas statute, the state must prove *valid* prior convictions. In *Duncan,* the Arkansas Supreme Court adopted the notion that a pardon renders the conviction a nullity. *Duncan* 254 Ark. at p. 451, 494 S.W.2d 127. Although the state court might have decided to interpret the state law differently, it firmly held that, for purposes of the enhancement statute, a conviction which has been pardonned is not a conviction. The circumstances of this case illustrate the fairness of the state court's principle and this Court shall not deviate from it. Thus, although the state places the burden upon the prosecution to show that a particular conviction was not pardoned, and petitioner here clearly stated he was pardoned,[4] and

---

**4.** Indeed petitioner went further stating, " . . . which at my house I have documents of that pardon on that." It would be contrary to the language and the spirit of the Arkansas statute to require the defendant to produce the pardon when the pardon records can readily by checked out in the Governor's office. More important, the state has the burden of proving statutorily satisfactory convictions.

the state offered no evidence to the contrary.

The truth is that the state could not have provided any evidence to rebut the petitioner's contention because it did not exist. The Arkansas Supreme Court has clearly held that the prosecutor must carry the significant burden of ferreting out information regarding the validity of prior convictions whenever he seeks enhancement. *Roach v. State*, 255 Ark 773, 778, 503 S.W.2d 467 (1973). It is the prosecutor who can and should check out the validity of the convictions he wishes to rely on. The state's responsibility to thoroughly investigate its claims in a criminal proceeding is always acute. And this should be especially evident to prosecutors who seek to send someone to the penitentiary for a term of 20 to 40 years on a predicate felony involving the theft of $45.00. They may ignore this incumbent obligation at the peril of their case for enhancement.

The Eighth Circuit has never faced the precise issue before the Court. The Fifth and Tenth Circuits Courts of Appeal have, however, examined similar questions regarding possible resentencing under an habitual offender statute where the initial sentence is defective. The Fifth Circuit followed the reasoning of *Burks* and *Bullington* to the conclusion that the government's failure to satisfy the requirements of the Texas enhancement statute constitutes an acquittal and therefore a second enhanced sentencing procedure would violate the Double Jeopardy Clause. *Bullard v. Estelle*, 665 F.2d 1347 (1982). *French v. Estelle*, 692 F.2d 1021 (1982); *Briggs v. Procunier*, 764 F.2d 368 (1985). The Tenth Circuit, by classifying the state's failure to show an element necessary for enhancement as a "trial error," has held that the Double Jeopardy does not bar resentencing in this context. *Linam v. Griffin*, 685 F.2d 369 (1982). The Court believes that the Fifth Circuit's line of cases is better reasoned and will follow its rationale.

In *Bullard*, the initial sentencing under the Texas procedure for enhancement was deemed invalid because the state neglected to establish that the defendant was the same person who had committed one of the prior convictions which the state offered as the basis for enhancement. *Bullard* at 1350. Since the Texas law afforded a separate proceeding for enhancement wherein the state had the burden of proving the prior offenses beyond a reasonable doubt, the court found that *Bullington* required the application of the Double Jeopardy Clause. *Id.* at 1357. The court then determined that the prosecution's failure to positively identify Bullard as the person previously convicted was a matter of the sufficiency of the evidence and not, as the state court had found, trial error. *Id.* at 1360. As a result, the Court ruled that for Texas to get a second chance to prove the fact of defendant's prior convictions would give the state a prohibited "second bite at the apple" on the issue of enhancement. *Id.* at 1362.

Eleven months after deciding *Bullard*, the Fifth Circuit reaffirmed its holding in a similar case. *French*, supra. Like *Bullard*, and the instant case, *French* involved an invalid sentencing procedure under a habitual offender statute. There the prosecution did not introduce any evidence during the sentencing phase as to the chronology of the prior conviction. The state had merely put into evidence the dates of the defendant's two prior convictions but did not show, as Texas law required, that the defendant had committed the second felony *after* being convicted for the first. *French* at 1023. Before the defendant could be resentenced, he filed a habeas petition. The circuit court eventually held that to resentence him under the enhancement procedure for an offense on which he had already been subjected to enhancement was to put him in jeopardy twice:

"We hold further, as required by our prior decision in *Bullard, supra,* that because the petitioner was once subjected to an enhancement proceeding where the state failed to produce sufficient evidence of habitual offender status to support a life sentence, the double jeopardy clause bars a second trial-like enhance-

ment proceeding on the basis of the one prior felony insufficiently proven at the earlier trial." *Id.* at 1025.

Interestingly, the Tenth Circuit case which stands in conflict with the Fifth Circuit rationale first expressed in *Bullard* and reaffirmed in *French* involves facts that are virtually identical to those in *French. Linam,* supra. The prosecution in *Linam* had also failed to produce evidence regarding the dates of the commission of the prior felonies. *Id.* at 371. The Supreme Court of New Mexico ruled that the enhancement statute required proof that subsequent offenses had occurred after conviction for the preceding felony. But the New Mexico Court remanded defendant's case for a second hearing on the habitual offender's evidence. *Id.* Upon a petition for federal habeas corpus, the United States Court of Appeals for the Tenth Circuit distinguished *Burks* by contending that the question of when the felonies were committed was merely a "formal matter." *Id.* The court concluded that the failure of the prosecutor was thus "closer to a reversal and retrial where the trial court has incorrectly excluded evidence than it is to a finding that the state had its 'one bite from the apple' and it failed to meet the burden of proof." *Linam* at 374. However, in view of the *Burks* distinction between trial errors and errors for lack of evidence, the *Linam* decision seems flawed. This Court does not believe that the *state's failure* to satisfy all of the evidentiary requirements of the statutory procedure for enhancing a convicted felon's sentence can logically be analogized to an error by the judge in excluding evidence.

Notwithstanding the Tenth Circuit's refusal to follow *Bullard,* the Fifth Circuit recently reaffirmed the holdings in *Bullard* and *French. Briggs* supra. In *Briggs* the Court held that jeopardy on the punishment phase of the bifurcated Texas trial attaches once the jury is sworn for the guilt phase, even if the state subsequently dismisses the enhancement case. *Briggs* at 372.

*Briggs* also answered the question whether the state might salvage the original enhancement if, on resentencing, it used prior convictions other than those relied on in the initial sentencing. In *French,* the Fifth Circuit had already suggested that the state could not resentence again, if it failed once, regardless of how many other prior convictions might be available. *French* at 1025, n. 7. The circuit court then slammed the door on this argument in *Briggs:*

"[W]e hold that double jeopardy prevented the retrial of Briggs as a habitual offender even though the state alleged different prior felonies in its second indictment.... In other words, once the state has failed to prove that the defendant is a habitual offender with respect to one predicate offense, for example, the burglary here, it may not seek to sentence him as a habitual offender for that underlying crime." Id. at 372–73.

In the instant case, the Court finds that the evidence submitted by the state to the jury cannot support the verdict of enhancement because petitioner was in fact pardoned with respect to one of the four convictions relied upon by the state. Under Arkansas law, pardoned convictions may not be used for enhancement. *Duncan, supra.* This Court concurs with the Fifth Circuit holdings in *Bullard, French,* and *Briggs* in concluding that the nature of the defect in the initial sentencing bars the state from attempting to resentence the petitioner under the Arkansas habitual offender statute. The failure of the prosecution to introduce four valid prior convictions results in an effective acquittal on the enhancement charge. It now makes no difference that there may have been other valid prior convictions not relied upon at the initial enhancement proceeding. To expose the petitioner to a second hearing in order that the prosecution might try again to satisfy the evidentiary burden set forth in the statute would violate the constitutional prohibition against double jeopardy. Of course, the state might offer any or all of the prior convictions to enhance the sentence on some conviction other than the one

upon which the previous enhancement proceeding was predicated. See *Briggs* at 373, n. 3. But having had an opportunity to provide the jury with evidence sufficient for enhancement on the vending machine theft and burglary charge, and having come up short, the state is not entitled to another opportunity to make its case on this particular conviction.

The defect in the state's evidence could have been avoided had the prosecutor researched the petitioner's record more thoroughly. This investigation would have revealed that the defendant had been pardoned with respect to one of the prior convictions upon which the prosecution sought to rely for enhancement. In any event, after the petitioner claimed in open court that the conviction had been pardoned, the prosecution was clearly put on notice that there might be some risk in relying on this conviction's validity. At this point he had another reason to check the matter out or he might have substituted one of the petitioner's other convictions, or introduced evidence of a fifth prior conviction to provide a margin of error should the questionable conviction prove defective. The government did not take these precautions, however, and the Double Jeopardy Clause of the Constitution now denies it a second opportunity to try out the issue.

Although the petitioner may not be subjected to a resentencing as a habitual offender for this predicate offense, the state may nevertheless sentence him for the underlying crime. The petitioner pled guilty to a class B felony arising out of the vending machine theft. Under Arkansas law at the time the petitioner committed this felony, a class B felony was punishable by a sentence of 3 to 20 years. Ark.Stat.Ann. s41–901. The state may therefore ask a jury to impose a sentence within this statutory range upon the petitioner. If the state chooses not to pursue a jury resentencing, the state trial court may fix the sentence at the minimum for a class B felony, which in this instance is three years. See *Richards v. State*, 254 Ark 760, 498 S.W.2d 1 (1973).

It is therefore ORDERED that the petitioner be sentenced on the predicate felony under the options described above within 60 days of this order. It is further ORDERED that if the state fails to so resentence petitioner within said period of time, petitioner shall be released and freed from custody.