**Johnny Lee NELSON, Appellee,**

v.

**A.L. LOCKHART, Director, Arkansas Dept. of Correction, Appellant.**

**No. 86–1872.**

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1987.

Decided Sept. 3, 1987.

John Wesley Hall, Jr., Little Rock, Ark., for appellee.

Before LAY, Chief Judge, and ARNOLD and WOLLMAN, Circuit Judges.

LAY, Chief Judge.

Johnny Lee Nelson pled guilty in Arkansas state court to burglary and theft after taking forty-five dollars from a vending machine. He agreed to be sentenced by a jury pursuant to the state's habitual criminal offender act. Ark.Stat.Ann. § 41–1001(2)(c) (Repl.1977). After the state introduced four prior felony convictions, Nelson received a twenty year sentence. The state now concedes that one of the felonies had, in fact, been pardoned. Nelson sought a writ of habeas corpus in the federal district court on the ground that use of the pardoned offense bars a second enhancement proceeding under principles of double jeopardy. The United States District Court for the Eastern District of Arkansas, the Honorable G. Thomas Eisele, Chief Judge, presiding, held that the double jeopardy clause precludes a retrial under the habitual offender statute.[1] *Nelson v. Lockhart*, 641 F.Supp. 174 (E.D.Ark. 1986). We affirm.

As the district court observed, the Supreme Court held that double jeopardy attaches in a hearing on sentencing where the sentencing procedure "was itself a trial on the punishment * * *." *Bullington v. Missouri*, 451 U.S. 430, 438, 101 S.Ct. 1852, 1858, 68 L.Ed.2d 270 (1981). In the instant case, the district court found that the sentencing procedure constituted a trial on the issue of sentencing. *Nelson v. Lockhart*, 641 F.Supp. at 180. The procedure of introducing evidence of prior convictions "resemble[d] a trial wherein both sides present evidence, examine and cross-examine witnesses, and the prosecution carries the bur-

Clint Miller, Asst. Atty. Gen., Little Rock, Ark., for appellant.

1. Petitioner was incarcerated on July 22, 1980. On July 24, 1986, subsequent to the issuance of this writ of habeas corpus, petitioner was released on bail by the state court pending this appeal. At the time of his release, petitioner had served six years. The range of punishment under the habitual offenders act is twenty to forty years. Ark.Stat.Ann. § 41–1001(2)(c) (Repl.1977). If the petitioner cannot be sentenced under the act, the range of punishment on the underlying charge is only five to twenty years. Ark.Stat.Ann. § 41–901(1)(c) (Repl. 1977).

den of proof beyond a reasonable doubt." [2] *Id.* at 180.

While conceding that it "erred in introducing into evidence a prior conviction of Nelson's that had been pardoned," [3] the state argues that this was simply trial error and that the state is entitled to retry petitioner by using proof of other valid convictions. Petitioner contends that double jeopardy bars a second hearing on enhanced punishment.

■ A defendant cannot invoke immunity from a second prosecution under the double jeopardy clause if the first conviction was reversed due solely to trial error. *United States v. Tateo,* 377 U.S. 463, 465, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964). Unlike reversal for insufficiency of evidence, reversal for trial error:

> implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct.

*Burks v. United States,* 437 U.S. 1, 15, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1977).

■ In support of its argument that admitting the pardoned conviction was mere trial error, the state urges this court to follow the rule set out in *United States v. Mandel,* 591 F.2d 1347, 1373–74 (4th Cir. 1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). While *Mandel* recognizes the traditional rules that reversal for evidentiary insufficiency precludes granting the government a second opportu-

nity to prosecute, *id.* at 1373, and that reversal for trial error does not preclude a second prosecution, *id., Mandel* applies a special rule in cases where there is both trial error and insufficient evidence. In those cases, where the trial error was to admit evidence that should have been held inadmissible, *Mandel* suggests that appellate courts not "adjudicate the sufficiency of the balance of the evidence," *id.* at 1374, because appellate courts should not act as triers of fact. *Id.* at 1374. Whatever the merits or concerns of such a rule, it is settled that if the state fails to provide sufficient evidence to establish the defendant's guilt, then principles of double jeopardy apply. *Burks v. United States,* 437 U.S. at 11, 98 S.Ct. at 2147.

The essence of the Double Jeopardy Clause is that it "forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks,* 437 U.S. at 11, 98 S.Ct. at 2147. Thus, if the jury's determination on Nelson's additional sentence was equivalent to a trial on that issue, then a second prosecution is barred under the double jeopardy clause. The district court found that the proceedings had "all the 'hallmarks of the trial on guilt or innocence.'" *Nelson v. Lockhart,* 641 F.Supp. at 180 (quoting *Bullington v. Missouri,* 451 U.S. at 439, 101 S.Ct. at 1858). The state had the "burden of proving some factual proposition beyond a reasonable doubt as a predicate to the jury's having discretion to impose a more serious sentence." *Nelson v. Lockhart,* 641 F.Supp. at 180.[4]

---

**2.** Under the practice followed in Arkansas, it had been the jury's responsibility to determine if there were adequate proof of the defendant's conviction of prior felonies. The 1977 Replacement to the Arkansas Statutes Annotated, however, changed this so that now the trial court has the responsibility of making a finding as to the defendant's guilt of prior felonies. Ark.Stat. Ann. § 41–1005(2) (Repl.1977). After the prosecutor has introduced evidence of the defendant's guilt of other felonies, the defendant may controvert the prosecutor's proof. *Id.* Although the revised statute was in force at the time of Nelson's trial, the state trial court nonetheless followed the old procedure in submitting the determination of Nelson's guilt of other felo-

nies and his over-all sentencing to the jury. No objection was made by either side and we review the double jeopardy issue under the procedure actually followed.

**3.** Under Arkansas law a pardoned conviction may not serve as a basis for sentence enhancement under the recidivist statute. *Duncan v. State,* 254 Ark. 449, 452, 494 S.W.2d 127, 129 (1973).

**4.** Arkansas law imposed on the prosecutor the conventional burden of proof to invoke the state's habitual offender statute:

> A previous conviction or finding of guilt of a felony may be proved by any evidence that

*Bullington,* upon which the district court relied in finding that there was a trial on the issue of punishment, states clearly the relevant factors in determining whether the sentencing hearing constituted a trial on that issue. In *Bullington* the petitioner had been convicted of first degree murder. 451 U.S. at 435, 101 S.Ct. at 1856. The applicable Missouri statute required a presentence hearing of any defendant convicted of capital murder. *Id.* at 433 n. 4, 101 S.Ct. at 1855 n. 4. After hearing argument by the defendant and the prosecutor, *id.* at 433–34, 101 S.Ct. at 1855–56, the jury had to determine if the prosecutor had established aggravating circumstances beyond a reasonable doubt. The jury found Bullington guilty of capital murder and the same jury returned an additional verdict fixing Bullington's punishment at life imprisonment without eligibility of probation or parole for fifty years. *Id.* at 435–36, 101 S.Ct. at 1856–57.

After the jury's verdict was received, Bullington moved for and was granted a new trial.[5] Because there was to be a new trial, the prosecution served notice that it intended to try to obtain the death penalty even though the earlier jury had granted only a life sentence. Bullington moved to strike the notice, arguing that the double jeopardy clause barred "the imposition of the penalty of death when the first jury

had declined to impose the death sentence." *Id.* at 436, 101 S.Ct. at 1857.

■ The Supreme Court found that because the "sentencing proceeding at petitioner's first trial was like the trial on the question of guilt or innocence, the protection afforded by the Double Jeopardy Clause to one acquitted by a jury [was] available to him, with respect to the death penalty, at his retrial." *Id.* at 446, 101 S.Ct. at 1862. Under *Bullington,* then, double jeopardy attaches to sentencing proceedings if the process of determining the defendant's punishment was similar to the process of determining guilt. Because the jury's determination of Nelson's sentencing had the same procedural protections as his trial for theft and burglary, we agree with the trial court's holding that the principles of *Bullington* are controlling.

We reject the state's argument for several reasons. First, the facts here show that the state failed to prove that the defendant had been convicted of four felonies. The state proved only three valid convictions and the jury verdict of guilt under the habitual offender act, which requires four felony convictions, was mistaken. Second, the admission of the pardoned conviction was not trial error; the trial court did not rule on the admissibility of the conviction that the defendant claimed was pardoned by Governor Faubus.[6] While the convic-

satisfies the trial court beyond a reasonable doubt that the defendant was convicted or found guilty.
Ark.Stat.Ann. § 41–1003 (Repl.1977).

**5.** After Bullington filed his motion for a new trial, the Supreme Court held that Missouri's practice of allowing women an automatic exemption from jury service was unconstitutional because it deprived the defendant of his right to a jury drawn from a fair cross section of the community. *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Relying on *Duren,* the trial court granted Bullington's motion for a new trial.

**6.** The state seeks to capitalize on this fact by claiming defense counsel was ineffective. This argument borders on absurdity. Based on the trial record, as meticulously set forth by Judge Eisele, the proof of the pardoned conviction was pursued by the state notwithstanding the petitioner's testifying that he had been pardoned for the specific offense in question. The prosecutor stated:

PROSECUTOR: Your Honor, I feel compelled at this time to make a motion to strike this testimony because I think the defendant is in error. I think he's confused as to the meaning of the pardon and a commutation. Now I hesitate to allow the jury to hear this and become confused and I would ask the Court to strike the testimony. It's hearsay—would be another stated objection. I think the records are clear that are in the court and perhaps some comment by the Court to the jury could clear the matter up.
THE COURT: I think he cleared it up himself when he said it was commuted to time served. Is that what you said?
NELSON: Yes, sir.
THE COURT: Does that answer your question? It was commuted to time served. It's not a pardon. Do you agree, Mr. Keaton?
DEFENSE COUNSEL: Well that's the way it sounds to me.
THE COURT: That's what he said in this last statement.
DEFENSE COUNSEL: All right.

tion in question was indeed submitted to the jury, Nelson had not engaged in any misconduct. For example, the petitioner did not deceive the court or the prosecutor as to the status of the pardoned conviction. In fact, he did all he could have been expected to do to make the court and prosecutor aware of his pardon. Responsibility for the evidence submitted remained with the prosecution.

Third, the *Mandel* case, upon which the state relies heavily, is inapplicable. In *Mandel* there was a "vast volume of evidence ..." 591 F.2d at 1373. By contrast, the State of Arkansas had introduced only four felony convictions in this case. In addition, *Mandel* was concerned with needless multiplicity of evidence, and the rule in that case was concerned with the competency of appellate courts to act as triers of fact. Neither of these concerns are raised in this case because there was no repetitious or duplicative evidence submitted on the habitual offenders count nor is there any difficulty for the appellate court in determining if the pardoned conviction was inadmissible. It unarguably was not admissible. Without the fourth conviction, the state has failed to provide sufficient evidence. Thus, even if we were to adopt

*Mandel,* which we do not, the rule in that case would not support the state's position.

Finally, we reject the state's argument because the district court was correct in its application of *Bullington v. Missouri.* As stated earlier, *Bullington* held that the double jeopardy clause was invoked where "the sentencing procedure at petitioner's first trial was like the trial on the question of guilt or innocence ..." *Id.* at 446, 101 S.Ct. at 1862. The statute in question is an evidentiary statute which requires the state to prove Nelson's prior felonies beyond a reasonable doubt. *Nelson v. Lockhart,* 641 F.Supp. at 179.[7]

The Fifth Circuit has addressed the issue we are faced with and held in *Briggs v. Procunier,* 764 F.2d 368, 372 (5th Cir.1985) that double jeopardy attaches to an initial hearing on a defendant's status as a habitual offender:

> We hold that double jeopardy prevented the retrial of Briggs as a habitual offender even though the state alleged different prior felonies in its second indictment. * * * In other words, once the state has failed to prove that the defendant is a habitual offender with respect to one predicate offense, for example, the

*Nelson v. Lockhart,* 641 F.Supp. at 182–83.

The prosecutor, who had the burden of proof, moved unflinchingly ahead without verifying the authenticity of the state's proof. The state now attempts to blame the defendant for not proving the pardon. This conveniently overlooks that the state had the burden of proof. Nevertheless, it is clear the trial court had no motion or objection to strike the state's proof of the invalid conviction. As Judge Eisele observed:

> The truth is that the state could not have provided any evidence to rebut the petitioner's contention because it did not exist. The Arkansas Supreme Court has clearly held that the prosecutor must carry the significant burden of ferreting out information regarding the validity of prior convictions whenever he seeks enhancement. *Roach v. State,* 255 Ark. 773, 778, 503 S.W.2d 467 (1973). It is the prosecutor who can and should check out the validity of the convictions he wishes to rely on. The state's responsibility to thoroughly investigate its claims in a criminal proceeding is always acute. And this should be especially evident to prosecutors who seek to send someone to the penitentiary for a term of 20 to 40 years on a predicate felony involving the theft

of $45.00. They may ignore this incumbent obligation at the peril of their case for enhancement.

7. The procedure used in sentencing under the habitual offender act supports a finding that double jeopardy attached. Arkansas law construes the habitual offender act as a statute allowing the jury to enhance punishment for an underlying felony, *Finch v. State,* 262 Ark. 313, 317, 556 S.W.2d 434, 436, (1977), and not as a distinct offense, *Harrison v. State,* 287 Ark. 102, 104, 696 S.W.2d 501, 502 (1985). Even though the habitual offender statute merely served to enhance Nelson's sentence, however, the sentencing procedure constituted a trial on the issue of punishment. That is, the jury had to decide whether the prosecutor had proved beyond a reasonable doubt that the defendant had committed four felonies. Furthermore, and as is required under the habitual offender act, the defendant was given the opportunity to controvert the state's evidence. Because of the similarities between the trial on the underlying felony and the hearing on sentencing, *Bullington v. Missouri,* 451 U.S. at 446, 101 S.Ct. at 1862 bars a second trial on enhancement of punishment.

burglary here, it may not seek to sentence him as a habitual offender for that underlying crime. *Briggs,* 764 F.2d at 372–73.[8]

We adopt the reasoning in *Briggs.* Accordingly, the judgment and order of the district court are affirmed.[9]

---

**8.** Several cases from the Fifth Circuit Court of Appeals hold that where the state has failed to prove a prior conviction, double jeopardy precluded retrial under a recidivist statute. *See Briggs v. Procunier,* 764 F.2d 368 (5th Cir.1985); *French v. Estelle,* 692 F.2d 1021 (5th Cir.1982), *cert. denied,* 461 U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983); *Bullard v. Estelle,* 665 F.2d 1347 (5th Cir.1982), *vacated on other grounds,* 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983). The state urges that these decisions, however, did not involve the admission of inadmissible evidence at trial, the exclusion of which would have tainted the factual findings and rendered them insufficient. In each case, however, the evidence as submitted was patently insufficient to support the convictions. *See Briggs,* 764 F.2d at 369 (after jury empaneled, state dismissed enhancement counts barred by double jeopardy), and *French,* 692 F.2d at 1350 (failure to prove defendant's identity as convicted felon in a prior conviction rendered evidence insufficient to support findings as a habitual criminal.) Because the evidence as submitted at Nelson's sentencing was insufficient, the rationale of these Fifth Circuit decisions supports our holding.

**9.** Because *Bullington* applies, a second trial on the issue of sentence enhancement is barred. Accordingly, Nelson's sentence will be reduced to remove the prejudice stemming from the habitual offender act. Arkansas state courts would treat the matter similarly. Upon finding defects in the prosecutor's proof as to prior felonies, Arkansas courts reduce the defendant's punishment to the minimum possible sentence. *Leggins v. State,* 267 Ark. 293, 297, 590 S.W.2d 22, 24 (1979); *McConahay v. State,* 257 Ark. 328, 331–32, 516 S.W.2d 887, 889 (1974); *Roach v. State,* 255 Ark. 773, 779, 503 S.W.2d 467, 471 (1973). Reductions in sentencing were typically contingent upon the prosecution's decision not to retry the case. *Leggins v. State,* 267 Ark. at 297, 590 S.W.2d at 25; *McConahay v. State,* 257 Ark. at 331–32, 516 S.W.2d at 889; *Roach v. State,* 255 Ark. at 779, 503 S.W.2d at 471.